RICHARD D. BRINCKERHOFF *v.* THE BOARD OF EDUCATION *for the city and county of New York, and the* SCHOOL OFFICERS OF THE NINETEENTH WARD, *impleaded with* THE MAYOR, ALDERMEN, &c., OF NEW YORK, *and others.*

Under an execution upon a judgment against a municipal corporation, the property of the corporation, *not devoted to public use,* may be taken and sold to satisfy the judgment. If there is no such property, the remedy is by *mandamus,* to compel the payment out of any money or fund under the corporate control, or to compel the raising of it by a tax, when the corporation has the power to impose a tax, or if, as is the case in the city of New York, the sanction of the legislature must be obtained, then to compel the corporation to include the amount of the judgment in its budget or petition to the legislature for authority.

A lien (under the Mechanics' Lien Law of this State) cannot be acquired for work done or materials furnished toward the erection of a public school-house, erected under the provisions of certain statutes, by which it is devoted to a public use, such property being exempt from seizure and sale under an execution, upon grounds of public necessity.

APPEAL by the plaintiff from a judgment dismissing the complaint.

The action was brought to foreclose a mechanic's lien for labor done and materials furnished toward the erection of a public school building in the nineteenth ward of the city of New York.

*Benjamin G. Hutchings*, for appellant.

*Abraham R. Lawrence, Jr.*, for respondents.

By THE COURT.—DALY, F. J.—I expressed the opinion, in *McMahon* v. *The Tenth Ward School Officers* (12 Abb. 129), that a party who performed work toward the erection of a public school-house in the city of New York, had a lien upon the building, which could be enforced under the acts for the better security of mechanics and others erecting buildings, or furnishing materials therefor, in this city (Laws of 1851, ch. 513; of 1855, ch. 404). But the point was not taken in that case, nor necessarily involved, as the judgment was reversible upon other grounds. In the notice of lien, The Board of School Officers, The Board of Education, The Mayor, Aldermen, and Commonalty of the city were alleged to be the owners of the school-house, and the notice to foreclose it was served upon each of these bodies. At the hearing, the referee dismissed the complaint, upon the ground that The Mayor, Aldermen, etc., were the owners of the building; that the contract was made with The Board of School Officers, and with The Board of Education, who were not the owners, nor the agents of the owners, and that consequently there was no contract with the owner of the building, in pursuance of which the plaintiff, who was a subcontractor, could acquire any lien. The point to be determined, therefore, was, assuming that a lien could be acquired, whether the referee was right in holding that the notice was defective, in alleging that the Board of School Officers and the Board of Education were, in conjunction with The Mayor, Aldermen, etc., the owners. This, as the case came before us, was the only question presented, and in conformity with a previous adjudication of this court, affirmed by the Court of Appeals, in *Loonie* v. *Hogan* (9 N. Y. 440), to the effect that one for whom the building is erected, and who is to pay for it, though he has not the legal title, and only an equitable interest in the land, is the owner, we held that these three bodies, having distributed between them all the rights and powers which the owners of such a building could possess, were, for the pur-

poses of the lien law, to be deemed collectively the owners. I, individually, was of the opinion that a school-house was within the design of the lien law. My colleagues, Judges Brady and Hilton, gave no opinion; they simply concurred in reversing the judgment; and my own opinion upon the point was expressed without the full examination which I have now given to it, as it is distinctly raised, and must be passed upon. It is sufficient, therefore, to say that we are not, under the rule of *stare decisis*, precluded by any thing decided in *McMahon* v. *The School Officers*, from considering whether under the statute a lien can be acquired for work done or materials furnished toward the erection of a public school-house, erected in accordance with the provisions of certain laws of the State relating to this city, and which is devoted by these laws to a public use (Laws of 1851, p. 749, §§ 28, 10, 25, 27; of 1853, p. 635, §§ 14, 2, 11; of 1854, p. 241, § 10).

Since the decision in the case of *McMahon* v. *The School Officers*, etc., the Court of Appeals, in *Darlington* v. *The Mayor &c. of N. Y.* (31 N. Y. R. 164), have considered the question how far a judgment against the city can be enforced by a levy and sale of property belonging to, or held in trust by it, as a municipal corporation. Chief Justice Denio, by whom the opinion of the majority of the court was delivered, held that a municipal, equally with a private, corporation, may have its property taken in execution, if payment of a judgment is not otherwise made; but he distinguishes, as exempt from the exercise of this right, such estate, real or personal, as may by law, or by authorized acts of the city government, be devoted to public use, such as the public edifices, or their furniture or ornaments, or the public parks or grounds, or such as may be legally pledged for the payment of its debts. These, he holds, cannot be seized to satisfy a judgment, as these structures are public property, devoted to specific public uses, in the same sense as similar structures are, in use by the State government, and though this is a distinction which appears to have been taken for the first time, it is one that commends itself as founded in public necessity.

It is said, in *Cuddon* v. *Eastwick* (1 Salk. 193; Holt, 433;

6 Mod. 123), that a municipal corporation is properly an invest-
ing of the people of a place with the local government thereof.
Chancellor Kent applies to such bodies the characteristic appel-
lation of "local republics," and says more particularly after-
ward, "they are created by the government for particular
purposes, as counties, cities, towns and villages; they are in-
vested with subordinate legislative powers, to be exercised for
local purposes connected with the public good, and such powers
are subject to the control of the people of the State" (2 Kent's
Com. 304). To which it may be added, that they are allowed,
as has been repeatedly said, to assume some of the duties of the
State, and enjoy property and power for that purpose, as aux-
iliaries of the government, and trustees for the people (*McKim*
v. *Odoer*, 3 Bland's Ch. R. 417; Angell & Ames on Corpora-
tions, § 18; *Darlington* v. *The Mayor, etc.*)

Municipal corporations are said to have come into use in
England in the form of boroughs, through an arrangement by
which certain managers of the local community undertook to
pay the yearly rent or sum due to the superior or sovereign, in
consideration of which they were permitted to levy the old duties,
and were responsible for the funds committed to their care.
This privilege of farming their tolls or duties was afterward con-
firmed to them by acts of incorporation embracing other privi-
leges, either gradually acquired or long enjoyed in places where
the Romans had introduced the *municipia*, or cities enjoying the
local right of self-government (Thompson's Essay on Municipal
History, pp. 10, 11, 12; Palgrave's Anglo Saxons, pp. 6, 11;
Millar's English Government, p. 340; Angell & Ames on Cor-
porations, §§ 16, 18, 21).

Having thus the right to collect duties, and being responsi-
ble for the funds coming into their hands, it came to be recog-
nized, very naturally, that they might, on the one hand, sue to
enforce the payment of duties, and, on the other, be themselves
sued to compel them to discharge the obligations they had
assumed. As their municipal authority and duties gradually
increased, the power to bring actions, and their liability at the
suit of others, was both increased and varied. Actions by and
against them are to be found as early as the Year Books, and

the power was generally conferred specifically in the acts of incorporation; but the works of authority are barren of exact information as to the manner in which judgments against them were enforced, which may have arisen from the fact that they rarely refused to pay a judgment when recovered, and were always able, from the nature of their powers, to procure the means to discharge it.

In *Rex* v. *Gardiner* (Cowp. 86), Justice Aston says: " As to the remedy of levying a duty upon a corporation, the books all agree that it may be levied, but they differ as to the mode." But he was speaking only to the question whether a private corporation—that is, a college—could be rated for the support of the poor of a parish. It is probable that a municipal corporation might, as was held in the case of private and trading corporations, be compelled to appear, or obey decrees for the payment of money after execution issued, by the common-law process of *distringas*, under which the lands and goods of the corporation could be distrained, and, in the event of noncompliance, sequestrated (*The Master and Wardens of the Company of Wax Chandlers*, Skin. 24; *The African Co.* Id. 84; 1 Ver. 121; *The East India Co.* 2 Id. 396 ; Precs. in Chy. 129 ; *The Hamborough Co. of Merchant Adventurers*, Cases in Ch. 204). The right, however, to recover a judgment against them, would necessarily carry with it the right to enforce the payment of it. But the mode of enforcing it, so far as I have been able to find, is by no means clearly indicated.

Rolle, C. J., in the case of the *Town of Colchester* (Styles, 267), says: " If a sum of money be to be levied upon a corporation, it may be levied upon the mayor, or upon any person being a member of the corporation." And in another case, in Styles, 366, the court ordered a *distringas*, to levy a fine of twenty pounds, imposed after indictment, upon the inhabitants of a parish, for not keeping a bridge in repair. But I do not find in the early abridgments of Fitzherbert, Brookes, or Sheppard, nor in that great repository of the common-law adjudications, Viner's Abridgment, nor in the English treatises which I have examined, any thing to indicate that judgments against municipal corporations ever were or could be enforced by the

seizure and sale of buildings, or other property of the corporation, devoted to public objects, such as jails, poor-houses, markets, court-houses, and other structures necessary in the local government of the place, and indispensable to enable a municipal corporation to carry out the purpose for which it is created.

There are three cases, of comparatively recent origin, all relating to the borough of Poole, a small seaport town in the south of England, in which, or in one of which, this right appears to have been recognized; but the point was not involved, and it is apparent from the report of each case, that in no one of them was the question examined, or so deliberately considered and passed upon, as to entitle it to the weight of an adjudication. This will appear from a very brief statement of these cases.

In the year 1837, the Mayor, Aldermen, and Burgesses of of the Borough of Poole, being indebted to their town clerk for his services, gave him their bond for £4,500, payable in installments. The first two installments remaining unpaid, he obtained a peremptory *mandamus* to compel the corporation to enforce payment out of the existing borough rates, or to collect another rate to pay the two installments, which the corporation having failed to do, he applied for an attachment, which was refused. It appears to have been conceded, from the report of the case, that a *mandamus* would lie to compel the corporation to levy a tax, if there were no other means of enforcing the payment of the debt; but the attachment was denied, because by the 5th and 6th of Wm. IV. ch. 76, the employees of a municipal corporation are to be paid out of the borough fund, and not out of that portion of it which consists of rates. The *mandamus* obtained required the corporation to pay out of the existing or any future rates, thus specifying the means by which payment was to be obtained, and leaving the corporation no option to resort to any other, there being no allegation in the *mandamus* that the corporation had no other fund from which payment might be made (*Régina* v. *Ledgard*, 1 Q. B. 616).

The town clerk afterward obtained a judgment against the

corporation upon the bond, and sued out an *elegit*, a process under which the lands of the defendant in a judgment may be given into the possession of the plaintiff, and held until the judgment is satisfied out of the rents and profits of the land, or it is paid by the defendant, when the land is restored to him. He sought under the *elegit* to obtain possession of the town-hall and markets, with the view, I suppose, of having the tolls of the latter applied to the payment of the judgment, but being unable to get possession, he brought ejectment. The corporation applied to defend, without confessing that they were in possession, upon the ground that their property, under the 5th and 6th Wm. IV. ch. 76, was applicable to public purposes only, and could not be taken upon execution. The court refused the application, upon the ground that the corporation would not be prejudiced in such a defense, whether it was available or not, by admitting possession. Lord Denham, C. J., declared, however, that the court did not wish to be understood as giving any countenance to the supposition that the corporate property, although directed by the statute to be applied to public purposes, and not to the private benefit of the members of the corporation, was protected from the lawful claims of persons having demands upon the corporation (*Doe ex dem. Parr v. Roe*, 1 Q. B. 700).

This was expressing a very decided opinion upon the point, but it is apparent, as I have said, that the question was not examined, or so deliberately considered as to give to the case much weight, especially when, as will be shown hereafter, there has been an express adjudication in this country to the contrary.

In 1843, the corporation leased their market-house, with the customs and tolls, to one Whitt, for the period of three years, at an annual rent, subject to two mortgages, which had been given in 1822. The town clerk having sued out his *elegit* before the lease was given, called upon Whitt to pay rent to him, or that he would turn him out, which Whitt did, and attorned to the town-clerk, without the privity of the corporation. The corporation having sued Whitt for the rent due upon the lease, he set up his eviction by the town clerk, and the possession of the town clerk

upon his *elegit;* but the corporation recovered the rent, the court holding that the right of immediate possession was in the mortgagees, and that the town clerk could not enter nor acquire any title under his *elegit,* the corporation having nothing to which the *elegit* could apply, except the legal right to the reversion, which was a very remote one, the mortgage being given for one thousand years (*The Mayor &c. of Poole* v. *Whitt,* 15 M. & Wells. 571).

In this last case, no question appears to have been raised, either by the counsel or the court, as to whether the town clerk would or would not have had the right to take possession of the market, under the *elegit,* if there had been no mortgage, which is the only aspect in which the case has any bearing; and it is not to be regarded as of weight upon a point not inquired into, the more especially as it would seem, from the decision of other cases, that the town clerk could be paid only out of the borough fund (*The Queen* v. *Ledgard, supra*), and that his proper remedy was to compel payment by *mandamus* (*The Queen* v. *The Mayor of Stamford,* 6 Q. B. 433; *Jones* v. *The Mayor &c. of Carmarthen,* 8 M. & Wells. 605; Tapping on Mandamus, 93; Wilcox on Municipal Corporations, 356).

Chancellor Kent, in declaring that municipal corporations can sue and be sued, remarks that the judicial reports of this country abound with cases of suits against towns in their corporate capacity, for debts and breaches of duty for which they are responsible; but he says nothing as to the mode in which judgments against them in such actions can be enforced (2 Kent, 275, 4th ed.), and the question is one upon which the authorities in this country are by no means agreed, for in some instances it has been held that their property cannot be taken on execution issued upon a judgment against them (*Chicago* v. *Halsey,* 25 Ill. R. 595); while in others it has been held that it can, or the right to take it has been impliedly recognized (*Crafts* v. *Elliotsville,* 47 Maine, 141; *Darlington* v. *The Mayor, supra*).

In the first of these cases (*Chicago* v. *Halsey,* 25 Ill. R. 595), it was held by the Supreme Court of Illinois, that upon a judgment against a municipal corporation, the corporate prop-

erty cannot be seized and sold under execution; that the proper remedy is a *mandamus* to compel a levy of taxes sufficient to enable the corporation to pay the judgment. The Superior Court of Chicago having refused to set aside an execution issued upon a judgment against the city, the Supreme Court of the State, upon appeal, reversed the decision of the court below, and directed it to enter an order quashing the execution. "It is true," says Breese, J., "that by the charter of the city it can sue and be sued, but it is not an inference that if sued, and a judgment passes against it, an ordinary writ of *fieri facias* can issue, under which its corporate property can be seized and sold. Nor is there any necessity for such a writ. On a debt being ascertained by judgment against the city, and a refusal to pay it, a *mandamus* can issue to compel payment, or to compel a levy of taxes sufficient to discharge the judgment;" closing with the remark, " we decide this on principle."

It may be collected, as the result of this examination, that, under an execution upon a judgment against a municipal corporation, the property of the corporation *not devoted to public use*, may be taken and sold to satisfy the judgment; that *if there is no such property*, the remedy is by *mandamus*, to compel the payment of the judgment out of any money or fund under the corporate control, or to compel the raising of it by tax, when the corporation is clothed with the power to impose a tax; or if, as is the case in this city, the sanction of the legislature must be obtained, then to compel the corporation to include the amount of the judgment in its budget or petition to the legislature for authority.

Property which is exempt from seizure and sale under an execution, upon grounds of public necessity, must, for the same reason, be equally exempt from the operation of the lien law, unless it appears by the law itself that property of this description was meant to be included.

There is nothing in the lien law that would warrant this inference. A lien is given by the act for labor performed or materials furnished, in the building, altering, or repairing of any house or other building, upon the building and the lot of land upon which it stands, to the extent of the right, title, and inter-

est of the owner at the time when notice of the claim was filed and served. The object of the act was to give mechanics and material men a security for the ultimate enforcement of their claim, by making it, from the time that notice of it is given, a lien or incumbrance upon the property benefited. Where the lien thus attaches, either party may bring the claim to a final determination, and if any thing is ascertained to be due to the claimant, judgment is entered for the amount of it, which judgment may be satisfied by the sale of all the right, title, and interest which the owner had to the property when the notice of the claim was filed and served.

When judgment is recovered in a court of record, it is a lien upon the real estate of the defendant, from the time when the judgment is docketed; and when recovered in courts not of record, it becomes a lien upon the filing of the judgment in the office of the county clerk. In these cases, it is enforced as a lien only from the time of the docketing of the judgment or the filing of the transcript; but the judgment obtained by foreclosure under the lien law may be enforced as a lien against the particular property from the time of the filing and service of notice of the claim, and that constitutes the particular benefit which it was the design of the act to confer upon the laborer or material man, and is the advantage which it gives him over ordinary creditors, as a security for the payment of the judgment he may ultimately obtain. With this exception, the judgment he obtains is, by the express language of the act, " to be enforced in all respects in the same manner as judgments rendered in all other civil actions for the payment of moneys " (Laws of N. Y. 1851, p. 955, § 8). And if judgments recovered in other actions cannot be enforced against a certain kind of property, for the reason that it is exempt from seizure and sale upon grounds of public necessity, neither can a judgment under the lien law, which is a mere foreclosure of a security obtained by the filing and service of notice of a claim (*Cronkright* v. *Thomson*, 1 E. D. Smith, 661 ; Nott's New York Lien Law, p. 63).

1 think the fair construction of the lien law is, that the security contemplated by the law may be obtained upon the building upon which the labor was bestowed or the materials fur-

Brinckerhoff v. The Board of Education of the City of New York.

nished, and upon the lot of land upon which the building stands, if the land and building can be sold to enforce a judgment in an ordinary civil action, but not otherwise; that we are not justified in holding that the legislature meant that this particular kind of creditor should have a lien upon public edifices, and the right to sell them to satisfy his claim, unless the legislature has expressly said so. The reason which exempts such structures, upon the grounds of public necessity, applies as forcibly in his case as in that of any other judgment creditor, and if all other judgment creditors are precluded from the exercise of such a right, he must be considered precluded also, in the absence of any provision that would warrant us in holding that the legislature designed that his case should be an exception to the operation of a general rule, having its foundation in public necessity.

The erecting and maintaining of school-houses in this city, for public education, is imposed as a duty upon the city by statute. Their erection, maintenance, and government is regulated by numerous statutory provisions. They are by law devoted to a public use, and therefore come within the operation of the rule above considered.

Judgment affirmed.

BRADY, J., concurred.

BARRETT, J., dissented.