## THOMPSON NAV. CO. v. CITY OF CHICAGO.

### (District Court, N. D. Illinois. April 5, 1897.)

COLLISION—LIABILITY OF CITY FOR NEGLIGENCE OF ITS FIRE TUG.
A city is liable in personam for a collision between its fire tug and another vessel, caused by the negligence of the tug. The Fidelity, Fed. Cas. No. 4,758, 16 Blatchf. 569, disapproved.

In Admiralty. Libel by the Thompson Navigation Company against the city of Chicago.

John C. Richberg, for libelant.
William G. Beale and B. Boyden, for defendant.

GROSSCUP, District Judge. This is a libel in personam against the city of Chicago, growing out of a collision between the fire tug Yo Semite, owned by that city, and the propeller City of Berlin, owned by the libelant. The collision occurred in the Chicago river, near the point where it branches into its south and north forks. At the time of the collision, the City of Berlin was lying in winter quarters. The circumstances of the collision were such that had the tug been owned by private owners, and engaged in a private enterprise, there could be no doubt of her liability for the injury done. In saying this, I keep fully in view the fact that fire tugs are expected by the nature of their duties to make haste. The haste in this case was blind and thoughtless, resulting in a delay to the tug, as well as injury to the City of Berlin. Indeed, counsel for the city do not seriously contest the fact of negligence. But the fire tug was at the time of the collision owned by the city of Chicago, and actually engaged in one of the public duties that Chicago, as a part of the government, undertakes. Do these facts, or either of them, exempt her, or the city, responding in her behalf, from what would otherwise be her clear liability?

At common law, one injured either in his property or person looks for compensation to the person or persons causing the injury, or to the master or principals of such persons, where the injury was done within the scope of their agency or service. In admiralty the rule is this: The vessel committing the unlawful injury is considered the offender, and the owner is mulcted to the extent of his interest in the vessel; not because he stands in the relation of principal or master to the crew, but alone because of the fact of

ownership. Thus, under laws preventive of piracy or smuggling, the vessel may be seized, condemned, and sold, notwithstanding the crew committing the unlawful acts were engaged by the owner for a lawful enterprise only, and were, in the commission of the unlawful acts, wholly outside the scope of their engagement. U. S. v. The Malek Adhel, 2 How. 209. Commenting upon this apparent anomaly of maritime jurisprudence, and showing that the doctrines advanced in the case then under consideration were not different from those prevailing generally in maritime law, Mr. Justice Story, at page 234, speaks as follows:

"The ship is also, by the general maritime law, held responsible for the torts and misconduct of the master and crew thereof, whether arising from negligence or a willful disregard of duty; as, for example, in cases of collision and other wrongs done upon the high seas or elsewhere within the admiralty and maritime jurisdiction, upon the general policy of that law which looks to the instrument itself, used as the means of the mischief, as the best and surest pledge for the compensation and indemnity to the injured party."

It is thus apparent that the liability of the owner, to the extent of his vessel, for injuries caused in a collision by negligence or misconduct, is not dependent upon the relation of master and servant, or principal and agent, existing between him and the crew manning the vessel, but rests solely upon the fact of ownership. The ship, which, in contemplation of maritime law, is not the hulk and machinery only, but includes the crew as well, is, as such, the offender, and the ensuing losses reach the owner simply because of his relationship to the offender. In Rome, it is said that, when the owner of slaves was assassinated, every slave belonging to him, however otherwise innocent, was put to death. The penalty came not as the result of participation, but as the result of relationship. The maritime law, for justifiable public purposes, inverts this mandate, putting every owner, by virtue of such relation, to the duty of compensation for losses inflicted by his ship property, to the extent, at least, of the value of such property. Nor is this liability of the owner indirect alone, for the admiralty rules of the supreme court provide (rule 15) "that, in all suits for damage by collision, the libelant may proceed against either the ship and master, or against the owner alone in personam." The method of procedure chosen does not change the substantive right or liability. In either case the ship is the offender. If the procedure be against the ship alone, resulting in seizure and sale, the owner is only indirectly reached; but, if it be against the owner in personam, the remedy against him is direct. The substantive right is compensation for the injury, and can be either by way of the ship or from the owner directly.

A firm grasp of this principle of maritime law clears this case of its difficulties. At common law the city is not liable for the negligent acts of its fire department, for the reason that the members of the fire department are not the servants of the city in its corporate capacity. The negligence of the firemen, therefore, is not attributable to the city. But in the case under consideration the injury done by the vessel, including its crew, to the libelant, is chargeable to the

owner, by virtue of the mere fact of ownership, and can be collected, directly, by seizure of the vessel, or, indirectly, by a suit in personam. In either case the liability rests, not in the relation of principal and agent, or master and servant, but in the bare fact of ownership.

But, though such liability exists, reasons of public policy may, in some cases, exempt the owner from suit. The government, as sovereign, for instance, declines to be made compulsorily amenable to the courts upon even its just obligations. This exemption, however, is founded entirely in public policy (The Siren, 7 Wall. 152), and ought not to be extended to cases where such considerations do not intervene. In England, I think, they do better. In claims arising against public vessels, the apparently conflicting right of the sovereign to exemption from suit, and her duty to respond to just claims, are both maintained by a procedure, effective, though somewhat fictitious. A petition of right is addressed by the aggrieved person to the lords in admiralty, representing the crown, who, in turn, direct their proctor to appear and answer a suit to be commenced in the admiralty court. This is equivalent to a waiver by the crown of its privilege as a sovereign, and to a consent that the rights of the parties be tried and determined in the suit as between subject and subject. There appears, however, to be no way of making the government of the United States, or of a state, parties to such a proceeding, because no procedure has been invented here whereby the right of immunity from suit is waived. But the city of Chicago is, by law, amenable to suit and judgment upon all just claims that may be brought against it. The doctrine of public policy, therefore, under which this exemption is accorded to sovereigns, stops short of city government. The law by making such cities suable abolishes the doctrine in what might otherwise be its application to city governments. The legislative will has, in effect, decreed that there is no public policy excepting cities from suit. The city is suable, and may be decreed to pay as a private owner where a case is proved. This clearly differentiates this case from The Siren, supra.

One other consideration alone remains: I have held, on the strength of The Fidelity, 16 Blatchf. 569, Fed. Cas. No. 4,758, decided by Chief Justice Waite on the circuit, that an action in rem cannot lie against this fire boat. Will that prevent a decree in personam against its owner? The difference between mere procedure and substantive right must be steadily borne in mind. The latter alone determines the right of some judgment or redress. The former only fixes the method of reaching it. A seizure of the vessel is only a species of execution in advance of judgment. It is usually permissible in admiralty, because, under ordinary circumstances, most effective and equitable. But public policy prevents its application to such instrumentalities of emergency as a fire tug. A city cannot be left to burn while a contest over a few dollars of damage is going on. The law, therefore, out of considerations of public policy, forbids such seizure, or any process that would disarm the city, even temporarily, of its equipment to put down fires or like dangers. But exemption of the owner of the boat from one of the ordinary processes of the

court is not, either in logic or law, a grant of immunity against liability, through some other procedure, not subject to such objections. The consideration of public policy extends only to the mischief to be averted. To give it a wider application would make it an instrument of injustice. ' An apt illustration of this limitation on procedure only is seen in the law which exempts cities, in the common-law court, from seizure of their property upon execution. But it has never been urged that, because of that, they were not suable at all, or that judgments entered against them were in no way enforceable.

My conclusion is that the city of Chicago, as owner, at the time of the collision, of the fire boat, is responsible to the libelant in an action in personam to the extent of the value of such fire boat for the injuries caused. I recognize that in this conclusion I depart from the case of The Fidelity, supra, but believe myself to be in consonance with the doctrine laid down in The Siren, supra, and The Malek Adhel, supra. A decree may be entered accordingly.