THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, Respondent, v. THE ATLAS STEAMSHIP COMPANY (LIMITED), Appellant.

The jurisdiction of the fire department of the city of New York over the construction of buildings and other structures on the wharves and piers in the city, includes structures on the wharves and piers owned by the city as well as those owned by private individuals. (PECKHAM, J., dissenting.)

The jurisdiction given to the dock department over the wharves and piers belonging to the city, and the structures thereon, by the act of 1871 (§ 99, chap. 574, Laws of 1871), gives to that department exclusive charge and control, such as a private owner has of structures owned by him; it does not interfere with the building and fire law or the power of the officers having charge of the execution thereof. (PECKHAM, J., dissenting.)

The history of legislation in relation to buildings and the prevention of fires in said city, given.

Whether the fire department acts independently as a distinct entity, with corporate powers, or as an agency of the city, it is not estopped from claiming against a lessee of one of the city wharves obedience to the building laws, and all orders and regulations lawfully made, in pursuance thereof, by the fact that the lease contains provisions in contravention of those laws and orders.

Accordingly *held*, in an action against a lessee of a pier belonging to the city, to recover the penalty imposed by the act of 1871 (§ 32, chap. 625, Laws of 1871), because of a violation of the requirements of a permit granted by the board of examiners for the erection of a structure on said pier, that plaintiff was *not estopped by a provision in the lease* authorizing the structure to be erected in a manner different from said requirements.

The provision of the act of 1874 (§ 8, chap. 547, Laws of 1874) constituting the board of examiners, is not violative of the provision of the State Constitution (§ 2, art. 10), requiring all city officers, whose election or appointment is not provided for by the Constitution, to be elected by the electors of the city or appointed by the authorities thereof designated by the legislature for that purpose. The members of the board are not, as such, city officers.

Even if they are to be considered city officers, as their offices were created subsequent to the adoption of the Constitution, they do not come within its purview.

The determination of said board of examiners as to the mode of construction of a building, if their requirements are not wholly impracticable, even if they are unreasonable, may not be reviewed by the courts.

(Argued April 17, 1887; decided October 4, 1887.)

Appeal from judgment of the General Term of the Court of Common Pleas of the city and county of New York, entered upon an order made May 12, 1885, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Everett P. Wheeler* for appellant. The dock department has exclusive jurisdiction over plans for all structures and piers on any part of water-front. (*Southern L. I. Co.* v. *Packer,* 17 N. Y. 51; *Yeaton* v. *U. S.,* 5 Cranch, 281; *Hartung* v. *People,* 22 N. Y. 95, 99; *Town of Duanesburgh* v. *Jenkins,* 57 id. 177, 191.) Before the passage of chapter 517, Laws of 1884, the dock department had exclusive jurisdiction over plans for structures on piers belonging to the city. (Laws of 1870, chap. 137, art. 4, p. 372, § 99; p. 390, §§ 97, 98; Laws of 1871, chap. 574, § 6, pp. 1235, 1244; Laws of 1866, chap. 873, § 27, p. 2025; Laws of 1874, chap. 547, § 8; *Smith* v. *People,* 47 N. Y. 330, 339; *People* v. *Morrison,* 78 id. 84.) The dock department has the exclusive charge and control of all structures on piers belonging to the city, and of the plans according to which the same should be built. (*In re N. Y. & B. B'dge,* 72 N. Y. 527; *People* v. *McClave,* 99 id. 83, 89; *Vedder* v. *Mudgett,* 95 id. 295, 313; *McAndrew* v. *Whitlock,* 52 id. 40; *Whipple* v. *Christian,* 80 id. 523; 66 id. 414; 47 id. 330; *In re D. & H. C. Co.,* 69 id. 209; *People* v. *Brinkerhoff,* 68 id. 259; *L. & B. R. Co.* v. *Bd. of W'ks.,* 3 K. & J. 123; *Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456, 466; *Witty* v. *Matthews,* 52 id. 512; *Hare* v. *Hortc.i,* 5 B. & Ad. 715.) The defendant was not estopped by submitting plans to the fire department. (Bigelow on Estop [4th ed.], 445; *Plumb* v. *Catt. Co. Ins. Co.,* 18 N. Y. 392; *Brown* v. *Bowen,* 30 id. 219, 541; *In re Kings Co. El. R. R. Co.,* Ct. App. March 52, 1887; 4 Wall. 2; 60 N. Y. 559.) The city being the landlord, must protect its tenant's possessions. (*Mayor, etc.,* v. *Mabie,* 13 N. Y. 151; *Mack* v. *Patchin,* 42 id. 167, 174; *People* v. *Draper,* 15 id. 532; *People* v. *Pinck-*

*ney,* 32 id. 377; Laws of 1870, chap. 137, art. 10, § 84; *O'Leary* v. *Bd. of Education,* 93 N. Y. 1; *Curnen* v. *Mayor, etc.,* 79 id. 511; *Brooklyn* v. *B. C. R. R. Co.,* 57 Barb. 497; *Indiana* v. *Milk,* 11 Fed. Rep. 389; *Cook Co.* v. *Harms,* 108 Ill. 151; *Pet. R. R. Co.* v. *N. & L. R. R. Co.,* 59 N. H. 385; Laws of 1873, pp. 484, 489, 491, §§ 1, 19, 26; 1 Greenl. Ev. § 536; *How* v. *B., N. Y. & L. E. R. R. Co.,* 37 N. Y. 297; *Willis* v. *Bk. of England,* 4 Ad. & Ell. 21, 39; *Bk. of Utica* v. *Mersereau,* 3 Barb. Ch. 528. 577; *Huff* v. *Hutchinson,* 14 How. [U. S.] 586; *Benton* v. *Woolsey,* 12 Pet. 27.) The legislature had no power to confer upon the board of examiners the authority to determine whether the shed upon the pier would be a violation of the law prohibiting the construction of buildings, or whether it would be dangerous in case of fire without being lined with wire netting, plastered with mortar. (Const. of 1846, § 2, Art. 10; Laws of 1874, chap. 547, § 8; Davies' Laws of City of N. Y. 488, § 84; id. 880; *People* v. *Albertson,* 55 N. Y. 50, 55; *S. P. L. S. R. R. Co.* v. *Roach,* 80 N. Y. 339; *People* v. *Raijmond,* 37 id. 428; 35 How. Pr. 173; *People* v. *Keeler,* 29 Hun, 175; *In re Kings Co. El. R. Co.,* 105 N. Y. 97; 2 Wash. R. Prop. [3d ed.] 6; *Martin* v. *Dry Dock Co.,* 92 N. Y. 70; *U. S.* v. *Arredondo,* 6 Pet. 691.) The condition exacted by the board of examiners was unreasonable. (Code, § 993; 2 Kent's Com. 296; *Dunham* v. *Trustees of Roch.,* 5 Cow. 465; *Lynch* v. *Met. R. Co.,* 90 N. Y. 77; *Kent* v. *Q. Min. Co.,* 78 id. 182; *Tripp* v. *Cook,* 26 Wend. 143, 152; *Condit* v. *Baldwin,* 21 N. Y. 219; *Stewart* v. *Morss,* 79 id. 629; *Beck* v. *Sheldon,* 48 id. 365; *Putnam* v. *Hubbell,* 42 id. 106; *Pollock* v. *Pollock,* 71 id. 137; *Sickels* v. *Flanagan,* 79 id. 224.) The subject-matter of this suit is wholly municipal, and the law having vested exclusively in the dock department the police power of regulating the construction of sheds or piers belonging to the city, the fire department has no jurisdiction of the subject and no police power over it. (Consolidation Act, §§ 44, 106, 619, 714, 716; *Ehrgott* v. *Mayor, etc.,* 96 N. Y. 264; *People ex rel. Ryan* v. *Civil Service Board,* 103 id. 357; 41 Hun 287.)

*William L. Findley* for respondent. The fire department, in the enforcement of the provisions of the building laws applicable to the city, does not act as the agent of the municipal corporation, and is not, therefore, estopped by anything done in the premises by any officer of the city government. (*Maximilian* v. *Mayor, etc.*, 62 N. Y. 160.) The office of examiner, created by section 8, chapter 547, Laws of 1874, having been established subsequent to the adoption of the Constitution of 1846, is not one of those which, pursuant to article 10, section 2 of the Constitution, must be filled by election by the people or appointment by some local authority. ( *Wood* v. *Draper*, 15 N. Y. 522.) The powers and duties of the old fire wardens were transferred to the "department for the survey and inspection of buildings." (Laws of 1862, chap. 356, § 45; Laws of 1849, chap. 84, §§ 28, 29; Laws of 1850, chap. 120, §§ 1, 2; Laws of 1871, chap. 625; Laws of 1874, chap. 547; Laws of 1880, chap. 521.) The board of fire commissioners and their subordinate, the inspector of buildings, are successors of the old fire wardens. (Laws of 1874, chap. 547, § 8; Laws of 1885, chap. 456, § 31.) The imposition of the condition in the erection of this building was within the powers of the board of examiners, and will not be reviewed or set aside by this court unless it is shown that the condition itself is so clearly impossible of performance, or would be so useless and inoperative, if carried out, that the court can say, as matter of law, that the requirement is an abuse of the powers conferred by the statutes. (*In re Wright*, 29 Hun, 357; *People* v. *Mayor, etc.*, 32 Barb. 102; *Baker* v. *Boston*, 12 Pick. 184.) At the time when the action was brought the respondent had, and still has, that jurisdiction over structures upon the piers, slips and bulk-heads of the city which this action asserts. (Laws of 1866, chap. 873; Laws of 1871, chap. 625, § 24; Laws of 1874, chap. 547; Laws of 1880, chap. 521; Laws of 1881, chap. 687, § 1.) The approval of specifications and plans by the superintendent of buildings means: That as to matters specified and provided for in building laws, he shall determine that the specifications and

plans are in accordance with the provisions of law; and as to matters not specially provided for in the law, shall exercise the discretion to determine and decide the manner of construction and materials to be used in the erection of the buildings. (Laws of 1871, chap. 625, § 24; Laws of 1885, chap. 456, § 24; Laws of 1874, chap. 547, § 8; Laws of 1881, chap. 687, § 1; Laws of 1882, chap. 410; Laws of 1884, chap. 517.)

Earl, J. The defendant, a foreign corporation, leased from the city of New York for a term of years the pier at the foot of West Twenty-fifth street, and on the 11th day of October, 1881, filed in the office of the bureau of inspection of buildings, in the fire department of the city, plans and specifications for the erection of a wooden shed upon that pier, and made application for a permit to erect the same. The application was put before the board of examiners created by section 8 of chapter 547 of the Laws of 1874, and was granted upon certain conditions, among which was one that the interior of the building should be covered with iron wire netting plastered with mortar. The defendant erected, and is now occupying the building, but without complying with the condition mentioned.

This action was brought to recover the penalty imposed by section 32 of chapter 625 of the Laws of 1871, and also to restrain the defendant from further occupying and using the building until the requirements of the permit for its erection shall be complied with. The action was tried at an equity term of the court and judgment was rendered in favor of the plaintiff. This appeal is from the affirmance of that judgment at the General Term.

The judgment is assailed upon four grounds which we will examine separately: (1.) It is claimed that the fire department had no jurisdiction whatever over this building upon the pier, but that its plan and structure were exclusively under the jurisdiction and subject to the control of the dock department; and to solve the question thus raised we are required to examine various statutes applicable to the city of

New York. In the act "to reduce general laws relating particularly to the city of New York into one act," passed April 9, 1813, many regulations were made for the prevention of fires, and the common ·council was authorized to pass ordinances for that purpose. In pursuance of the power thus conferred, the common council passed ordinances providing for the appointment of fire wardens charged with the duty and clothed with the power to examine buildings and other structures and combustible materials, and to enforce the regulations contained in statutes and ordinances for the prevention of fires. The powers and duties of fire wardens were transferred to the captains of police by the act (chap. 315 of the Laws of 1844), and were conferred upon the assistant engineers of the fire department by section 28 of the act (chap. 84 of the Laws of 1849). By the act (Chap. 120 of the Laws of 1850) provision was made for the appointment of twelve fire wardens, who were to possess the powers and discharge the duties which had previously been devolved upon the assistant engineers. Under the acts (Chap. 470 of the Laws of 1860, and chap. 356 of the Laws of 1862) extensive and minute provisions were made for the inspection of buildings and for protection against fires, and there can be no question that down to the year 1866 all the laws enacted for the inspection of buildings and for protection against fires in the city of New York were, by their general terms, just as applicable to buildings upon wharves and piers as to other buildings, and for precisely the same reasons. In the latter year an act (Chap. 873) was passed " to amend and reduce to one act the several acts relating to buildings, and the keeping and charge of combustible materials in the city of New York," in section 27 of which it was specially provided " that all steam-boat and ferry-houses, or other structures upon or adjoining any pier, slip or bulk-head in said city, may and shall be constructed in such manner as said superintendent (of buildings), shall determine and designate under his certificate, first, to be obtained therefor." This provision plainly applied, not only to structures upon private wharves and piers, but also to

structures upon the wharves and piers owned by the city. In 1871 another general building act (Chap. 625), was passed, and in section 24 it was again especially provided that " all steamboat and ferry-houses or other structures upon or adjoining any pier, slip or bulk-head in said city shall not be constructed, except in such manner and of such materials as said superintendent of buildings shall determine and designate, under his certificate, first to be obtained therefor." Prior to the year 1871, there had, by law, been created in the city of New York, a fire department, and a department of buildings, and the chief officer of the latter department was styled superintendent of buildings. The act of 1871 was amended in 1874, by chapter 547 of that year, and section 8 of the latter act amended section 31 of the former act so as to make it read as follows: " The department of buildings, named under this act, shall have full power in passing upon any question relative to the mode, manner of construction or materials to be used in the erection, alteration or repair of any building in the city of New York, where the same is not specially provided for herein, to make the same conform to the true intent, meaning and spirit of the several provisions hereof; and shall, also, have discretionary power upon application therefor, to modify or vary any of the several provisions of this act, to meet the requirements of special cases where the same do not conflict with the public safety and public good, so that substantial justice may be done ; but no such discretion shall be permitted, except a record of the same shall be kept by said department, and a certificate be first issued to the party applying for the same; such certificate shall be passed upon previously by a board of examiners, consisting of the superintendent of buildings, a member of the examining committee of New York Chapter of the American Institute of Architects, one of the ex-presidents of the New York Board of Underwriters, and two members of the Mechanics and Traders' Exchange of said city, one of the latter of whom shall be a master carpenter, and one a master mason, all of whom, except said superintendent, shall be selected by their respective organizations

and so certified by the proper officers to the said superintendent. * * * The members of said board, excepting said superintendent, shall each be entitled to and shall receive ten dollars for each attendance at a meeting of said board, * * * but in no case shall they be entitled to receive compensation for more than two meeting in any one month. And provided, further that no permit for the erection of any structure on any wharf, pier or bulk-head, shall be issued by the superintendent of buildings, except by and with the approval of the said board of examiners." While the legislature was thus dealing with the act of 1871, and amending several sections thereof, it did not touch the provision thereof above quoted, but, by the last clause of section 8, simply placed a limitation upon the jurisdiction of the superintendent of buildings in granting permits for the erection of structures upon wharves, piers and bulk-heads, and that limitation clearly applied to wharves, piers and bulk-heads owned by the city, as well as to those owned by individuals.

The next legislative act upon this subject is chapter 521, of the Laws of 1880, which abolished the department of buildings and the office of superintendent of buildings; created the bureau of inspection of buildings as a branch of the fire department, with an inspector of buildings at its head, and conferred upon the fire department and the inspector all the powers that had theretofore belonged to the department and the superintendent of buildings, respectively; and thus that department, and the inspector also, became possessed of all the powers which, at a still earlier date, had been exercised by the fire wardens.

Section 30 of the act of 1871 required that before the erection, construction, alteration or repair of any building in the city should be commenced, the owner, architect or builder should notify the superintendent of buildings, and submit to him a detailed statement of the specifications and plans, and that the erection, construction, alteration or repairs of the building should not be commenced or proceeded with until the specifications and plans should have been approved by the

superintendent. That section was amended by chapter 687 of the Laws of 1881, among other things, by substituting the fire department and inspector of buildings in the place of the superintendent of buildings.

·In the consolidation act (chap. 410 of the Laws of 1882, § 495) the provision as contained in the acts of 1866 and 1871, above quoted, was continued, and the last clause of section 8 of the act of·1874, above quoted, was also continued as the last clause of section 504. In 1885, after judgment in this action, several sections of the consolidation act were amended, and among those amended was section 504, but the last clause as it before existed was continued. These statutes, it seems to us, clearly indicate the legislative purpose.

The executive officers of the fire department, under whatever name it existed, were, at all times, required to be men of technical skill and knowledge, and to them was committed the protection of the city against fires. In the language of the statute, no buildings or structures within the fire limits were excepted from their jurisdiction, and since 1866, by express provision, all structures upon all wharves and piers were subjected to their regulation and control, like the other buildings in the city; and the contention of the defendant rests wholly upon the statute to which attention must now be called.

In 1870, by chapter 137, the legislature adopted a new charter for the city, which provided that the city government should consist of several co-ordinate departments. Among them were the department of docks, the fire department and the department of buildings. The powers of these departments were not particularly defined, but they were left to the operation of existing laws. The charter act of 1870 was amended by chapter 574 of the Laws of 1871, and the powers of the dock department were defined and greatly enlarged. By an amendment of section 99 of the former act it was provided as follows: "The department of docks in the city of New York shall have exclusive charge and control, subject in the particulars hereinafter mentioned to the com-

missioners of the sinking fund of said city, of all the wharf property belonging to the corporation of the city of New York, including all the wharves, piers, bulk-heads and structures thereon, and waters adjacent thereto, and all the slips, basins, docks, water-fronts, land under water, and structures thereon, and the appurtenances, easements, uses, reversions and rights belonging thereto, which are now owned or possessed by the said corporation, or to which said corporation is or may become entitled, or which said corporation may acquire under the provisions hereof, or otherwise; and said department shall have exclusive charge and control of the repairing, building, rebuilding, maintaining, altering, strengthening, leasing and protecting said property, and every part thereof, and of all the cleaning, dredging and deepening necessary in and about the same. Said department is also hereby invested with the exclusive government and regulation of all wharves, piers, bulk-heads and structures thereon, and waters adjacent thereto, and all the basins, slips and docks, with the land under water in said city not owned by said corporation. The duties and powers heretofore performed and exercised by any officer, department or bureau of the said corporation in and about all or any part of the said property, are hereby transferred to and vested exclusively in the said department; but this provision shall not affect the aforesaid powers of the commissioners of the sinking fund." Here is certainly very broad and sweeping language, and, standing alone, it would be sufficient to uphold the contention of the defendant. But what was the apparent object of the law-makers? They were not legislating in reference to the protection of the city against fires, and probably did not have that matter in mind. It is not to be supposed that they meant, for the first time in the history of the city, to remove structures upon wharves and piers entirely out of the operation of the building and fire laws applicable to the city and from the protection of the skilled officers who had charge of the execution of those laws. What reason could there be for exempting such structures from the operation of those laws while every

other structure in the city remained subject to them? The language is satisfied by construing it to give to the department the exclusive charge and control of the wharves and piers belonging to the city and the structures thereon and of the repairing, building, maintaining and leasing, governing and regulating the same, such as a private owner would have of any structures owned by him in the city. There is certainly nothing in the language which obliges us to construe it as giving the department the exclusive power to determine and approve the plans and specifications for such structures and thus to override the building and fire laws framed with great care for the protection of the city. This is made more clear, and we may say with propriety entirely clear, when we see that the same legislature, at the same time, had under consideration the amendment of the building laws, which was accomplished only two days later, by the act chapter 625 above referred to, in section 24 of which the structures upon wharves and piers were by the language, which we have heretofore quoted, expressly placed under the jurisdiction of the superintendent of buildings. And still further confirmation is given to these views by the still further legislation above referred to when the matter of the protection of the city against fires was expressly the subject of consideration and of legislation. The provision above quoted, giving the dock department the exclusive charge and control, is also found in the consolidation act of 1882, which also contains the special provision above quoted giving the fire department the jurisdiction of structures upon wharves and piers. All these various statutes should be so construed, if possible, that they will harmonize and stand together and so as not to bring them into conflict with each other, and this can be done by subjecting the structures upon the wharves and piers of the city to the building laws of the city and to the jurisdiction of the officers who have charge of the execution of such laws. The only other alternative is to hold that the structures upon wharves and piers belonging to the city, although erected by private individuals, are not included in the sweeping and explicit language

of the building acts, and this we cannot do without doing violence to the language used and to the policy upon which we believe all the legislation was based. The main contention of the defendant upon this appeal must therefore fail.

(2.) The defendant, by its lease of the pier from the dock department, was not authorized to violate the building laws applicable to the city. No department or officer of the city government could enter into a valid stipulation with the defendant by which it would be authorized to violate any law enacted for the public safety. Therefore, whether the plaintiff acts independently as a distinct entity with corporate powers within the doctrine of *Maximilian* v. *Mayor*, etc. (62 N. Y. 160), or whether it acts as an agency of the city, representing it, it is not, as contended by the defendant, estopped from claiming against the defendant obedience to the building laws, and all orders and regulations lawfully made in pursuance thereof. If the dock department made an illegal lease to the defendant, it may surrender the pier and refuse thereafter to pay rent. But while it retains the pier it must comply with the law and pay rent.

(3.) It is contended, on behalf of the defendant, that section 8 of chapter 547 of the Laws of 1874, so far as it constitutes the board of examiners, is invalid as in conflict with section 2 of article 10 of the Constitution. The members of that board, excepting the superintendent of buildings, are not required to be elected by the electors of the city or of any division thereof, nor are they required to be appointed by any of the city authorities, and hence, if they were city officers, there might be some ground for the contention of the defendant. But they are in no sense city officers. They receive no salary, take no oath of office and have no tenure or term of office. Aside from the superintendent, no one of the examiners can at any time be said to be in office or to hold any office. These examiners are not permanent for any time. They can only act when they have been designated in the mode pointed out in the section, and may be changed at any meeting of the board. They are mere experts employed on behalf of the

city as an architect or skilled foreman or boss mason or boss carpenter might be employed, and they have no official characteristics. But if they could be called officers, their offices were created subsequently to the adoption of the Constitution, and hence they do not come within its purview. (*Wood* v. *Draper*, 15 N. Y. 532 ; *People* v. *Palmer*, 52 id. 83.) We do not find that, prior to 1846, there were any city officers with the powers or even substantial functions devolved upon these examiners

(4.) We cannot say that it was impossible for the defendant to comply with the requirement of the examiners that the interior of the building should be covered with iron netting and plastered with mortar. The findings of the trial judge, supported by some evidence, conclude us. The examiners had jurisdiction of the matter, and their determination cannot be reviewed by the courts, even if their requirement was unreasonable, so long as it was not wholly impracticable.

We are, therefore, of opinion that the judgment should be affirmed, with costs.

All concur, except PECKHAM, J., who dissents upon the ground that the subject was under the exclusive jurisdiction of the dock department.

Judgment affirmed.