AMELIA T. BIELING, Respondent and Appellant, *v.* THE CITY OF BROOKLYN, Appellant, and RIPLEY ROPES, Respondent.

Where a wooden awning over a city street is permitted, a duty devolves upon the municipal authorities to exercise reasonable diligence to see that it is adequately secured, and where an injury results from a defect of construction which might have been ascertained by inspection, or from an accumulation of snow, permitted to remain upon the awning for such length of time as to warrant the inference of notice to the city officials charged with the duty of keeping the street in repair, the municipality is liable.

Under the charter of the city of Brooklyn (Chap. 863, Laws of 1873) the primary duty of caring for its streets and keeping them in a safe condition for public use is imposed upon the city; the department and officers

charged with that duty, except so far as otherwise provided by the statute, are to be treated as instrumentalities employed for its performance, and it is responsible for damages to individuals resulting from their negligent action or omission.

The city is not relieved from such liability by the provision of said charter (§ 27, tit. 19), declaring that it "shall not be liable in damages for any misfeasance or nonfeasance of * * * any officer of the city * * * of any duty imposed upon them, or any or either of them" by said act; that provision applies only where a duty is devolved, not upon the city, but directly upon some officer or department.

The provision of the act of 1881 (§ 1, chap. 457, Laws of 1881) providing that the heads of departments and officers of said city shall not be liable to third parties for the misfeasance or nonfeasance of any person appointed by or subordinate to them, is not violative of the state constitution.

*It seems* it is in harmony with the common-law rule applicable to municipal officers, that the corporation, not the officer, should be held responsible for injuries caused by the negligence of subordinates.

Where, therefore, a person was injured by the fall of a wooden awning which had been constructed in violation of a city ordinance, and had been suffered to remain for several years over the sidewalk of a street in said city, which awning was not securely supported, and upon which snow had been permitted to accumulate and remain for such a length of time as to warrant an inference of notice to the city, *held*, that the city was liable.

Also, *held*, that in the absence of evidence of personal negligence on the part of the commissioner of the department of public works, he was not liable.

An appeal to this court from an order of the General Term affirming a judgment is not authorized; the appeal must be from the judgment entered upon the order.

(Argued January 30, 1890; decided April 15, 1890.)

APPEAL by the city of Brooklyn from an order of the General Term of the City Court of Brooklyn, made August 25, 1887, which reversed a judgment entered upon an order dismissing the complaint on trial, and which granted a new trial.

Also appeal by the plaintiff from an order of the General Term affirming a like judgment in favor of the defendant Ropes.

The nature of the action and the material facts are stated in the opinion.

*Almet F. Jenks* for appellant.   The plaintiff did not show negligence imputable to the defendant, the city of Brooklyn, which entitled her to go to the jury as against the defendant, the city of Brooklyn, irrespective of any statute casting the liability elsewhere.   (2 Dillon on Mun. Corp. § 950 ; *Levy* v. *Mayor, etc.*, 1 Sandf. 467 ; *Griffin* v. *Mayor, etc.*, 9 N. Y. 547 ; *Todd* v. *City of Troy*, 61 id. 506 ; *Hume* v. *Mayor, etc.*, 74 id. 456 ; *Drake* v. *City of Lowell*, 13 Metc. 292 ; *Taylor* v. *City of Yonkers*, 105 N. Y. 202.)   There is no liability on the part of the city.   The liability, if any, is cast by a statute, where it properly belongs, upon the defendant, Ropes.)   Laws of 1873, chap. 863, § 27 ; *Gray* v. *City of Brooklyn*, 50 Barb. 374 ; *In re N. Y. P. E. School*, 31 N. Y. 574–585 ; *Fitzpatrick* v. *Slocum*, 89 id. 358 ; *Harley* v. *City of Brooklyn*, 90 id. 435 ; Laws of 1854, chap. 384 ; Laws of 1872, chap. 364 ; Laws of 1880, chap. 377 ; Laws of 1873, chap. 863 ; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 165 ; *Bennett* v. *Whitney*, 94 id. 306 ; *Hoover* v. *Barkhoff*, 44 id. 113 ; *Rowland* v. *Mayor, etc.*, 82 id. 372 ; Laws of 1867, chap. 295, § 4 ; 40 Hun, 335 ; *Van Vranken* v. *City of Syracuse*, 31 id. 516.)   The " exemption clause " is not a statute of immunity in derogation of a common-law liability.)   Dillon on Mun. Corp. § 1022 ; *Hill* v. *Boston*, 122 Mass. 344 ; *Bennett* v. *Whitney*, 94 N. Y. 302.)

*F. P. Bellamy* for respondent.   Every municipal corporation is charged with the duty of keeping its streets and sidewalks at all times in a safe condition for use by travellers. For any neglect or omission of this obvious duty, the municipality is liable in damages to any injured person.   (Dillon on Mun. Corp. § 753 ; *Hutson* v. *Mayor, etc.*, 9 N. Y. 163 ; *R. W. L. Co.* v. *Rochester*, 3 id. 463 ; *Diveny* v. *Elmira*, 57 id. 506 ; *Hines* v. *Lockport*, 50 id. 236 ; *Clemence* v. *Auburn*, 66 id. 341 ; *Champlin* v. *Village of Penn Yan*, 34 Hun, 33 ; *Barton* v. *Syracuse*, 37 Barb. 292 ; 36 N. Y. 54 ; *Quinlan* v. *City of Utica*, 11 Hun, 218 ; 32 Alb. L. J. 424.)   A municipal corporation cannot discharge its duty of keeping its streets

and sidewalks safe, simply by directing its subordinates to ascertain the facts and report, or even by passing ordinance. (*Goodfellow* v. *Mayor, etc.,* 100 N. Y. 15, 18, 19; 2 East. R. 151; 32 Alb. L. J. 424; *Rehberg* v. *Mayor, etc.,* 91 N. Y. 137; *People* v. *City of Brooklyn,* 65 id. 349.) The awning was in violation of city ordinances. (*Hume* v. *Mayor, etc.,* 74 N. Y. 264; *Todd* v. *City of Troy,* 61 id. 509; *Clemence* v. *City of Auburn,* 66 id. 342; 32 Alb. L. J. 424; *Masterton* v. *Mt. Vernon,* 58 N. Y. 394; *Weed* v. *Balston Spa,* 76 id. 336; *Requa* v. *Rochester,* 45 id. 129; *Clark* v. *Lockport,* 49 Barb. 580; *Bullock* v. *Mayor, etc.,* 99 N. Y. 654; *Nevins* v. *Rochester,* 76 id. 620.) The city of Brooklyn not only had knowledge of the erection and continuance of this illegal wooden awning over its public street, but through its police officers and other subordinates supervised its construction and assumed its subsequent care for four years before the accident. (*Rehberg* v. *Mayor, etc.,* 91 N. Y. 144; *Clifford* v. *Dam,* 81 id. 52; *Turner.* v. *City of Newburg,* 109 id. 301; *Shook* v. *City of Cohoes,* 108 id. 648; Whart. on Neg. § 262; 3 Dillon on Mun. Corp. 624, § 521; *Reinhardt* v. *Mayor, etc.,* 2 Daly, 243.) The "exemption clause," in the charter of Brooklyn, will not relieve the city from liability for its neglect of the imperative municipal duty to maintain its public streets in a safe condition. (Laws of 1873, chap. 863, § 4; Laws of 1883, chap. 354, § 8; *Pennie* v. *City of Brooklyn,* 97 N. Y. 654; *People ex rel.* v. *City of Brooklyn,* 103 id. 370; *Hardy* v. *City of Brooklyn,* 90 id. 435; *Vincent* v. *City of Brooklyn,* 31 Hun, 122; *Jenner* v. *City of Brooklyn,* 44 id. 371; *Seifert* v. *City of Brooklyn,* 101 N. Y. 136; *Walsh* v. *Mayor, etc.,* 107 id. 220; *Fitzpatrick* v. *Slocum,* 89 id. 359; *Fitzgerald* v. *City of Binghamton,* 40 Hun, 332; Laws of 1873, chap. 863, § 27; Laws of 1883, chap. 354, § 8; *Rehberg* v. *Mayor, etc.,* 91 N. Y. 144; Laws of 1878, chap. 863, § 48.) The charter exemption clause has been practically repealed by the subsequent repugnant law, chapter 457 of the Laws of 1881, which in terms absolutely exempts all heads of departments and other city officers in Brooklyn from liability there-

under. (Laws of 1881, chap. 457, § 8, subd. 1; *People* v. *Bull*, 46 N. Y. 68.) All the reported cases for the past twenty years disclose a marked determination to wipe this so-called exemption clause out of existence as a defense in ordinary cases of municipal negligence. (*Fitzpatrick* v. *Slocum*, 89 N. Y. 359; *Hardy* v. *City of Brooklyn*, 90 id. 435; *Vincent* v. *City of Brooklyn*, 31 Hun, 122; *Jenner* v. *City of Brooklyn*, 44 id. 371.)

*John A. Taylor* for respondent Ripley Ropes. Defendant Ropes is absolved by chapter 457 of the Laws of 1881, section 1, subdivision 1, last clause, from all responsibility. The duty of discovering defective awnings, or other obstructions, was not devolved by the charter upon the department of city works. (Laws of 1873, tit. 11, § 24; Brooklyn Ordinances, chap. 3, art. 6.)

Bradley, J. The action was brought to recover damages for personal injuries suffered by the plaintiff, and alleged to have been occasioned by the negligence of the defendants. The injury was caused by the falling of an awning, under which the plaintiff was passing, on the sidewalk on Court street in the city of Brooklyn, in December, 1883. It was placed there several years before, and the fact that the awning was covered with boards, seems to have been in violation of an ordinance of the city. The evidence tended to prove that the ends of the rafters next to the building were not securely supported, that they were merely toe-nailed to it, and that the weight of snow, which had been accumulating upon the awning for some time, caused it to fall. By the weight upon the awning the nails, or some of them, by which the ends of the rafters were fastened to the side of the building, were drawn out. It does not appear that this defect in construction was apparent to passing observation, or that any examination of it was or was not made to ascertain its security. It is quite likely that the manner of construction, its means of support and inefficiency, especially to bear the weight of snow permitted

to gather and remain upon it, may have been ascertained by inspection; and it is so important for the safety of travel on the sidewalk of a public street in a city that structures of that character should be adequately secured, as to call upon the constituted authorities to exercise reasonable diligence to see that they are so. The length of time which the evidence tended to prove the snow had been permitted to accumulate and remain upon the awning, was such as to warrant the inference of notice of its condition to the city or those charged with the duty of keeping the streets in suitable condition for the public use and safety. This awning was, in fact, unsafe in the condition it was with the snow upon it. And the evidence was such as to permit the jury to find that the plaintiff's injury was attributable to the negligence of the city, through its constituted authorities. (*Hume* v. *Mayor, etc.*, 74 N. Y. 264; *Todd* v. *City of Troy*, 61 id. 506.)

It is, however, contended that the city of Brooklyn was relieved from liability by the provision of the statute, that " The city of Brooklyn shall not be liable in damages for any misfeasance or nonfeasance of the common council, or any officer of the city or appointee of the common council, of any duty imposed upon them, or any or either of them, by the provisions of this act, or of any other duty enjoined upon them, or any or either of them, as officers of government, by any provision of this act; but the remedy of the party or parties aggrieved for any such misfeasance or nonfeasance shall be by mandamus, or other proceeding or action, to compel the performance of the duty, or by other action against the members of the common council, officer or appointee, as the rights of such party or parties may by law admit, if at all." (Laws 1873, chap. 863, tit. 19, § 27.) And to support the application of this exemption of the city to the present case, reference is made to the statute relating to the department of city works of the city, and providing that the commissioner of that department shall, *inter alia*, have charge and control, subject to the direction of the common council, of paving and repaving and repairing and cleaning streets, avenues and places, and keeping

the same clear of encroachments, obstructions and incumbrances (Laws of 1873, tit. 14, §§ 1, 2, sub. 8 ; Laws of 1880, chap. 377) ; also, that amongst others there should be in the department, a bureau having the care and charge of street cleaning and keeping the streets, avenues and places free and clear of encroachments, obstruction and incumbrances, the chief officer of which should be called the superintendent of streets. (Laws of 1873, chap. 863, tit. 14, § 3, sub. 5.) It appears by this statute that the matter of taking care of the streets was placed in the charge and under the control of the commissioner of the department of city works, qualified by being subject to the direction of the common council ; and to carry out and execute the power thus vested in the commissioner, the bureau before mentioned was created, and with him was the power and duty to appoint the chief officer, subordinates and employes of the bureau. The defendant Ropes was the commissioner of that department at the time of the injury to the plaintiff. It evidently was in view of the statute before mentioned, that he was made a party defendant. The city was incorporated more than fifty years ago, and until 1862 no provision appears to have been made to relieve it from its full corporate responsibility. In that year such provision was inserted in the charter. (Laws of 1862, chap. 63, § 39.) And the question of its effect was raised and considered in *Gray* v. *City of Brooklyn*, (50 Barb. 365), where it was held available as a defense, and the decision was affirmed by the Court of Appeals. (2 Abb. Ct. App. Dec. 267.) The construction and effect of this statute was again considered in *Fitzpatrick* v. *Slocum* (89 N. Y. 358), which was brought against the commissioners of the department of city works, to recover for personal injury received by the plaintiff there, when proceeding to step on to a bridge in one of the streets of the city, and negligence of the defendants was alleged as the cause of the accident. The court held that the case did not come within the provision of the statute exempting the city from liability, and that the plaintiff was not entitled to recover. And in referring to that provision of the statute Judge Earl, in speaking for the court, said :

"We are of the opinion that the exemption created by this section (Laws of 1873, tit. 19, § 27) is not as broad as claimed. There must be a remedy in such a case, where one is injured, without fault of his own, by a defect in one of the streets or bridges of the city, either against the city or some or one of its officers. * * * That section does not exempt the city from liability to discharge a duty resting upon it and which it has not devolved upon any of its officers."

In the later case of *Hardy* v. *City of Brooklyn* (90 N. Y. 435), brought to recover damages for injuries to plaintiff's real estate in the city, occasioned by negligence in constructing a sewer, this statute was relied upon for defense. The court reiterated and approved the construction given to it in the *Fitzpatrick Case*, and the recovery against the city was sustained. In both of those cases that of *Gray* v. *City of Brooklyn* was referred to; and in the former, after remarking that the views expressed were not in conflict with anything decided in that case, the learned judge said that it did not appear very clearly upon what ground the *Gray Case* was decided; that it was a sufficient defense to the action that there no negligence was proven to charge the city. The construction of this statute in its application or effect as an exemption of the city from liability, so far as it is given by those cases, is so limited as to require, for the purposes of such relief, that a plain duty be devolved upon certain officers whose misfeasance or nonfeasance has caused the injury complained of, and in that case only, is the statute effectual to exempt the city from liability where it otherwise would be chargeable. A municipal corporation derives not only its existence, but its powers from the statute. It is not important for the purposes of the question here whether its liabilities for negligence in the exercise of its powers arise from contract implied by the grant and acceptance of its charter, or from duties imposed upon it by statute. The municipality can perform its functions only through officers or agencies. For the discharge of those powers of a governmental or political character, which are vested by the statute in officers, and those duties not placed

upon it but upon officers or departments created and vested with powers for public purposes as distinguished from those for the purposes of the corporation, it is not responsible for their misconduct or neglect, to individuals suffering damages as the result of it. (*Lloyd* v. *Mayor, etc.*, 5 N. Y. 374; *Maximilian* v. *Mayor, etc.*, 62 id. 160; *Ham* v. *Mayor, etc.*, 70 id. 459; *Smith* v. *City of Rochester*, 76 id. 506.)

There are various duties which are legitimately those of the corporation, amongst which is that of taking care of the streets within it. To keep them in safe condition for public use was a primary duty resting upon the city of Brooklyn. And the departments and officers charged with that duty, except so far as otherwise provided by statute, would be treated as instrumentalities created and employed to perform for it those corporate functions, and it would be responsible for the consequences resulting from their negligent action or omission in that service injuriously to individuals. This was the relation to the city of the department of city works, its commissioner and bureau, so far as they were charged with that duty, and such was the liability of the city, except as it was relieved from it by the statute before referred to. The streets are expressly placed within the jurisdiction and power of the city and its common council. (Laws of 1873, chap. 863, tit. 19, § 21.) It has been seen that the control given to the commissioner of the department of city works, is subject to the direction of the common council, in which is vested the general powers of the city, except so far as they are delegated by the charter to other officials. (*Moore* v. *Mayor, etc.*, 73 N. Y. 238.) This qualified power is devolved upon the commissioner and the bureau which the statute has created.

It is, perhaps, unnecessary to consider the question whether the doctrine of *respondeat superior* would have been applicable to the relation between him and the chief officer, subordinates and employes for that bureau, since the statute has provided that the heads of departments and officers of the city shall not be liable to third parties for the misfeasance or

nonfeasance, of any person appointed by or subordinate to them.   (Laws of 1881, chap. 457, § 1.)

The contention that this statute is unconstitutional because its effect is to defeat the application of that maxim to the relation between the commissioner and his subordinate is not sustained.   The department of city works and its commissioner are within the agency of the municipal corporation, so far as relates to the care and management of the streets, and it is responsible for their negligence in the line of their duty, except so far as it is relieved by the statute from liability, for the manner of the exercise of the powers devolved upon them. That liability was qualified by the statute, and the statute last mentioned was apparently only a modification of that qualification, so as to render the commissioner responsible only for his personal official acts and omissions.   This is in harmony with the common-law rule applicable to municipal officers who are charged with the performance of corporate duties and may employ subordinates to aid in their accomplishment.   The corporation in such case, and not he, is the superior, and liable to third persons for the injuries occasioned to them by the negligence of such subordinates.   (*Lloyd* v. *Mayor, etc.,* 5 N. Y. 369.)   There is no evidence tending to prove any misfeasance or nonfeasance of the commissioner Ropes.   It cannot be assumed that he, as the head of the department, was required to or did inspect or ascertain the condition, in all respects and places, and at all times, of the many miles of streets in the city.   The notice of a defective condition in a street, which may be inferred after a lapse of a reasonable time, rests upon the fact that it is within the power, and, therefore, is the duty of the municipal corporation, by the requisite agencies, to exercise due diligence to bring it to the attention of the constituted authority through those instrumentalities.   (*Rehberg* v. *Mayor, etc.,* 91 N. Y. 137.)   The subordinates and employes of the commissioner are in the service of the corporation, and it is chargeable for their negligence in the line of the service assigned to them.   It is not here intended to include in this term, subordinates and employes, those persons who may be

deemed officers within this statute of exemption.   Unless it appears that the injury complained of was the result of the misfeasance or nonfeasance of the common council, or some of its appointees, or of some officer, of a duty imposed upon them, or some of them, the statute does not aid the city.

It does not appear that the defendant Ropes was personally at fault in respect to the cause of such injury, and, therefore, as to him the complaint was properly dismissed.

In the distribution of the powers of the department of city works with a view to their execution, those relating to the streets were placed in charge of the bureau referred to.   The duties of which bureau were not expressly imposed upon its chief officer, the superintendent of streets.   Whatever were his duties it does not appear that he was personally chargeable with negligence in the matter, and he was not liable for the negligence of the subordinates and employes in the bureau. They were appointed by the commissioner.   (Laws of 1873, chap. 863, tit. 14, § 3; Id. tit. 19, § 8.)   And for that reason, if for no other, the doctrine of *respondeat superior*, as between the superintendent and them, has no application.   (*Baily* v. *Mayor*, etc., 3 Hill, 531.)   It may be observed that the malfeasance or nonfeasance of those subordinates and employes is not, by the statute, made a cause for relief of the city from liability.   There seems to be no evidence to support or locate any such charge against any officer or the common council, or any of its appointees, within the meaning of the statute in respect to the dangerous character or condition of the awning, or to impute to any of them the fact or inference of negligence which the evidence tended to prove was the cause of the plaintiff's injury ; and, therefore, the defense of the city was not necessarily aided in the present case by the statute. This view is founded upon the fact that the primary duty to keep the streets in repair and use due care to give to them a condition of safety for legitimate use by the public rested upon the city; that, except so far as qualified by the statute, its liability to individuals sustaining damages occasioned solely by the fault or negligence in the performance of that duty

existed ; and that to relieve itself from such responsibility it must be made to appear that the cause of the injury com plained of, so far as it may tend to support an action, is within the provision of the statute exempting the city from liability. That defense was not, by the evidence in the present case, established.

The appeal taken by the plaintiff is not effectual to bring anything into this court for review. It appears by the notice of appeal to have been taken from the order of the General Term affirming the judgment in favor of the defendant Ropes. No such appeal is authorized, and none was taken from the judgment entered upon such order, and from which only it could have been taken. That appeal should be dismissed.

The order granting a new trial, from which the defendant, the city of Brooklyn, appealed should be affirmed and judgment absolute directed against the defendant.

All concur except BROWN, J., dissenting as to the affirmance of the order against the city of Brooklyn, and HAIGHT, J., not sitting.

Order affirmed, and judgment accordingly.