WORKMAN v. MAYOR, ETC., OF THE CITY OF NEW YORK et al.

(District Court, S. D. New York. August 15, 1894.)

1. COLLISION—NEGLIGENCE OF FIRE BOAT.
    The fire boat New Yorker, belonging to New York City, in hastening to reach a fire opposite pier 48, East river, collided with a barkentine which was properly moored to the dock. At the time of the collision another fire boat was already at work on the fire. *Held*, that the urgency created by the duty to extinguish the fire was not so extreme as to excuse the New Yorker's failure to exercise reasonable care.

2. SAME—LIABILITY OF MUNICIPAL CORPORATION—FIRE DEPARTMENT.
    Laws 1882, c. 410, § 27, declares that, "for all purposes, the local administration and government of the city of New York, shall continue to be in, and to be performed by the corporation aforesaid," i. e. the mayor and aldermen. Section 34 creates "the following other departments,"—among them, the fire department,—and the act declares the powers and duties of these departments to be "administrative and governmental." *Held*, that the extinguishment of fires is a work of local administration, within the meaning of the statute, and as such, though assigned to the fire department of the corporation, is a duty of the corporation, to be performed by that department as its agent, and that the corporation is liable for a tort committed by its agent in negligently performing such duty; and is also liable as "owner of the vessel" under the maritime law.

In Admiralty. Libel by Robert W. Workman against the mayor and aldermen of the city of New York, the fire department of said city, and James A. Gallagher, for damages caused by a collision.

Wing, Shoudy & Putnam and Mr. Burlingham, for libelant.

William H. Clark, Corp. Counsel, and James M. Ward, Asst. Corp. Counsel, for Mayor, etc.

William L. Findlay, for Fire Department and Gallagher.

BROWN, District Judge. In the afternoon of July 11, 1893, a fire broke out on the westerly side of South street, about opposite pier 48, East river. For the purpose of assisting in putting out the fire, the fire boat New Yorker, belonging to the mayor, aldermen, etc., made her way into the adjoining slip, and in the haste of the occasion she was run into the bow of the barkentine Linda Park, causing the latter considerable damage, for which the above libel was filed.

1. For the respondent it is contended, that a less rigid rule of care is applicable in the urgencies of such an occasion, and that considering the circumstances, the collision should not be held to have proceeded from negligence. I have no doubt that some acts which might properly be deemed negligent under ordinary circumstances ought not to be held negligent under the stress of fires. But the same general rule is, I think, nevertheless to be applied as the test of what is due care, viz., the care that a man of ordinary prudence would be reasonably supposed to exercise under like circumstances, if the burning property, and the property damaged, had been his own. Making all such allowances, and looking at the facts from that point

of view, I still think, considering that the Linda Park was properly moored at the dock, that the fire boat Havemeyer was already at work in the slip, and the urgency not being extreme, that the running into the Linda Park arose through lack of reasonable prudence, and was unnecessary, and negligent.

The fire boat belonged to the city, but was under the control and management of the fire department, the heads of which are appointed by the mayor. It is contended that neither the mayor, aldermen, etc., nor the fire department, is legally answerable for these damages; not the mayor, etc., it is said, because though owner, it had no control over the management of the vessel; and its duties were not corporate duties. The fire department, it is said, is not liable, because not a corporation capable of being sued, nor having any funds for the payment of any decree.

2. It is certainly a startling proposition, that all the shipping of this port, foreign and domestic, should be at the mercy of the city fire boats, and liable to be negligently run down and sunk at any moment, without responsibility for damages. By the maritime law, both the vessel and the owner are ordinarily liable for such a marine tort. But if the vessel is in the public service, she is not allowed to be withdrawn therefrom by arrest and sale, for reasons of the public convenience (The Fidelity, 16 Blatchf. 569, Fed. Cas. No. 4,758); or, if the owner, by whose authority and consent she is navigated, can show any other independent legal principal in control of the navigation, such, for example, as a charterer in possession, then the latter only is personally responsible, on the principle of respondeat superior. If the legal principal at the time of the injury was the state; that is, if the vessel was strictly in the service of the state, and in the performance of state duties, the state as sovereign not being suable, there is, perhaps, no redress. except by action against the particular individual in fault, and an appeal to the grace and the moral obligation of the sovereign for compensation by legislative act.

But it is obvious that the fire boat New Yorker, at the time she inflicted this injury, was not in the service of the state, nor performing any duty of the state. The extinction of fires is not a duty of the state, nor a work which the state has ever undertaken to perform, as a part of its general governmental functions. The state was certainly not the principal in the navigation of the New Yorker. Only the corporation, or the fire department, as an independent legal entity, could, therefore, be the principal; and if the fire department is not an independent legal entity capable of being sued, as the defendant contends, then, inasmuch as the city corporation owned the vessel, appointed the heads of the fire department, and put the vessel in their charge to be navigated for this very work, the corporation must be responsible, in the view of the maritime law, as the only legal principal in the case. To absolve itself, it must show some other independent legal principal in charge of the navigation. The F. C. Latrobe, 28 Fed. 377.

3. The relations of the city corporation and the fire department to each other, and to the state, and their respective rights and obli-

gations, are questions of local municipal law, upon which the decisions of the court of appeals, as the highest tribunal of the state, are binding on the federal courts. Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012; Claiborne Co. v. Brooks, 111 U. S. 400, 410, 4 Sup. Ct. 489.

The court of appeals has made no adjudication as to the status of the fire department of this city under the consolidation act of 1882, or as to the responsibility of the corporation for the acts or negligence of that department.

As respects the general responsibility of municipal corporations for torts, the settled law of this state, since the decision of the court of appeals in Conrad v. Trustees, 16 N. Y. 158, adopting the opinion of Seldon, J., in Weet v. Brockport (see note, 16 N. Y. 163), is that the conferring of corporate powers, privileges and duties, if accepted and acted upon by the corporation, is a sufficient consideration for the implied agreement to exercise such duties with fidelity, and that "whenever the corporation assumes to exercise its corporate powers, it is bound to see that due care and caution are used to avoid injury to individuals" (Id. p. 172). In all subsequent discussions, the decisions have turned essentially upon the question, whether the work or duties in the execution of which the negligence occurred, were properly corporate duties, intended to be imposed by law on the corporation; or whether they were duties of a general governmental nature, appropriate to the state, and imposed, not upon the corporation itself, but only upon certain officers of the corporation, or a department of the corporation, as an independent agency of the state, as the state might have appointed any other individuals, or board, to perform the same duties.

In the former case, the corporation is held liable; in the latter, not. To the latter class, under the acts prior to 1882, belong the duties of the department of charities and correction, in charge of the poor, the criminal and the insane (Maxmilian v. Mayor, etc., 62 N. Y. 160); those of the police department (Swift v. Mayor, 83 N. Y. 535); those of the board of education (Ham v. Mayor, 70 N. Y. 459); in all which cases the corporation was held not liable. See, also, New York, etc., Sawmill Co. v. City of Brooklyn, 71 N. Y. 580, and Bieling v. City of Brooklyn, 120 N. Y. 105, 106, 24 N. E. 389. The doctrine of the first three cases was, that the duties there in question were a part of the general governmental functions of the state, such duties as the state was accustomed to provide for, and to enforce, by means of some officers, throughout the state, and in the most retired townships—"such duties as are to be performed in every political division of the state, not for its peculiar benefit, but for the public" at large (per Folger, J., in Maxmilian v. Mayor, etc., 62 N. Y. 168); and that when the duties are of such a nature, and, by the acts in question, are "not laid upon the corporate body," and do not inure to its peculiar benefit, profit or advantage, the imposing of such duties on individual officers, or a department, of the corporation, is not to be construed as imposing any new duties or liabilities upon the corporation itself, and therefore does not make the corporation legally responsible as principal.

On the other hand, where the nature of the work and of the duties required by the statute to be performed, are not of the above character, but are essentially local, in which the municipality has a special interest, as distinguished from the public at large; or where the corporation derives therefrom some emolument, profit or advantage, then the imposition of duties upon officers, or a department, of the corporation, though not expressly laid upon the corporation itself, is construed as intended to create corporate duties, to be performed by the corporation through the designated instrumentalities as the agents of the corporation. Bieling v. City of Brooklyn, 120 N. Y. 105, 106, 24 N. E. 389. Such has been held to be the nature of the duties of the street department and the park department, in the case of the public streets, the bridges, and the sewers; of the dock department, as respects the docks, and of the Croton water commissioners, on the introduction of Croton water; in all which cases, the city, on similar statutory provisions, has been held liable. See Ehrgott v. Mayor, etc., 96 N. Y. 271, and the cases there cited; Barney Dumping-Boat Co. v. Mayor, etc., 40 Fed. 50; Philadelphia & R. R. Co. v. Mayor, etc., 38 Fed. 159.

Upon the numerous cases cited, and the full discussion of the general subject by Earl, J., in Ehrgott v. Mayor, etc., supra; by Folger, J., in Maxmilian v. Mayor, etc., supra; and by Mr. Justice Hunt in the case of Barnes v. District of Columbia, 91 U. S. 540, upon a statute in all respects analogous to the New York statutes prior to the act of 1882 (cited by Earl, J., with evident approval), there seems to me no doubt that the present case belongs to the latter class, and that the corporation is liable for the negligence of the fire department, not only from the local nature of the duties of that department, and the special benefits therefrom to the municipality, and the advantages to the corporation, but also from the language of the consolidation act itself (Laws 1882, c. 410, §§ 27, 34, 123, 193, 424).

The court of appeals, as above mentioned, has not adjudicated this question, under the act of 1882. On the contrary, in the most recent reference to the subject that I have found, viz., in the case of Fire Department v. Atlas Steamship Co., 106 N. Y. 566, 13 N. E. 329, though that act in some of its relations was there fully considered in the opinion of Earl, J., the question was left undetermined, as immaterial in that case, "whether it [the fire department] acts independently as a distinct entity with corporate powers, within the doctrine of Maxmilian v. Mayor, etc., 62 N. Y. 160, or whether it acts as an agency of the city, representing it." Page 577, 106 N. Y., and page 333, 13 N. E. This language is of itself a sufficient answer to the respondent's contention that the exemption of the city from liability for the fire department's acts under the existing statute, has been already adjudged by that court.

It further shows that there was present in the mind of the court the language and the views presented by the same experienced judge in his opinion in Ehrgott v. Mayor, etc., supra, in which he said that "although this duty [to keep the streets of the city in repair in the annexed district] is to be exclusively performed by the

park commissioners, yet it is a duty which they perform for it [the city], and it remains responsible for the condition of its streets."

The duties of the fire department are not, I think, within the ruling of Maxmilian v. Mayor, etc.; they come rather within the other class of cases, such as streets, sewers, etc. Their nature stamps them as essentially local, and mainly of local concern, like the duties relating to the sewers, bridges, and streets; and as being of even more distinctly local concern than the streets, bridges, etc., which, in a measure, are for the use and benefit of all the people of the state. There is no benefit that can be affirmed to result to the corporation from the care of the streets, that does not inure more largely and more directly from the extinction of fires.

In the case of Bates v. Inhabitants, 151 Mass. 184, 23 N. E. 1070, a state whose courts have pushed furthest the doctrine of municipal exemption, Holmes, J., says: "The interest of towns in the sewers is so distinct from that of the public at large, that they are held with reason to the ordinary responsibilities of owners." This is manifestly equally true of the instrumentalities used, and of the work done, in extinguishing fires.

Again, the work of the fire department is not in the least of a general governmental nature, enforced in some form throughout the state for the benefit of the public at large. The extinction of fires is not, and never has been, a state function. It has always been done either by volunteer companies, or by such special local organizations as have been formed and authorized to perform this service; or else by local municipalities or boards similarly authorized in particular localities.

Public governmental duties are such as pertain to the administration of general laws for the benefit and protection of the whole public. "Private or corporate powers are those which the city is authorized to execute for its own emolument, and from which it deprives special advantage; or for the increased comfort of its citizens; or for the well ordering and convenient regulation of particular classes of the business of its inhabitants; but are not exercised in the discharge of those general and recognized duties which are undertaken by the government for the universal benefit." Per Shipman, J., in Hart v. Bridgeport, 13 Blatchf. 293, Fed. Cas. No. 6,149; Greenwood v. Town of Westport, 60 Fed. 571, 572. In the case of Jewett v. New Haven, 38 Conn. 389, Chief Justice Butler says:

"There is no mode by which to determine whether a power or duty is governmental or not, except to inquire whether it is in its nature, such as all well-ordered governments exercise generally for the good of all, and one whose exercise all citizens have a right to require directly, or by municipal agency; and whether it has ever been assumed or imposed, as such, by the government of this state, and would have been exercised by the state, if it had not been by the city. Tested by these criteria, the extinguishment of fires is not a public governmental duty."

Nothing could be more apposite to the present case, than these observations in the cases last cited.

The extinction of fires is, moreover, not merely for the benefit of the individual owners; but for the immediate pecuniary benefit of the corporation as well, whose yearly revenues of $35,000,000, and upwards, come mainly from the annual taxation upon improved property—taxation that amounts on the average to about one-sixth of the entire annual value of the property, which is more or less directly saved to the city by the extinction of fires. Here, again, the interest and the advantage to the corporation are more special and peculiar than in the care and preservation of the streets.

The whole course of reasoning in Maxmilian *v.* Mayor, etc., supra, plainly, as it seems to me, excludes the work of the fire department from the analogy of that case. The extinction and prevention of fires seem peculiarly appropriate to the localities immediately concerned. The usage and past history of fire companies attest it; so that in the absence of any indication of a contrary intent in the statute of 1882, there seems to me no doubt that the duties as to fires imposed by the act of 1882 on the fire department of the corporation, were designed to be made a duty of the corporation, to be performed by that department, as the agent of the city, and representing it, as intimated by Earl, J. See, also, per Bradley, J., in Bieling *v.* City of Brooklyn, 120 N. Y. 106, 24 N. E. 389. In this respect the case of Barnes *v.* District of Columbia, 91 U. S. 540, 545, 547, is precisely analogous, and its reasoning convincing. In that case every argument here adduced to exempt the city from liability, seems to me to be fully met and answered. That case has been repeatedly followed, and says Mr. Justice Harlan, in District of Columbia *v.* Woodbury, 136 U. S. 450, 10 Sup. Ct. 990, has "never since been questioned." See, also, per Mr. Justice Bradley, in Metropolitan R. Co. *v.* District of Columbia, 132 U. S. 9, 10 Sup. Ct. 19, and the learned and exhaustive opinion of Judge Townsend in Greenwood *v.* Town of Westport, 60 Fed. 560, 572–574.

4. Aside from the above general considerations, however, the intent of the act of 1882, to make the work of the fire department a duty of the corporation, seems clearly indicated in the very language of the consolidation act (Laws 1882, c. 410, §§ 27, 34, 424, et seq.). Section 27 of that act declares that "for all purposes, the local administration and government of the city of New York, shall continue to be in, and to be performed by the corporation aforesaid," i. e.: the mayor, aldermen, etc. Section 29 invests the board of aldermen with certain legislative powers, and section 34 provides that there shall be "the following other departments in said city," naming 11, of which the fire department is one. The powers and duties of these departments, as defined in the other sections of this act, are all "administrative and governmental;" and almost the whole field of municipal duties is distributed among these various departments.

The different provisions of this act are to be construed harmoniously "and so as not to bring them into conflict with each other." Per Earl, J., in Fire Department of New York *v.* Atlas Steamship Co., 106 N. Y. 576, 13 N. E. 329. When section 27, therefore, declares that "for all purposes, the local administration and government shall be performed by the corporation," it must mean

that every "local" administrative and governmental duty found distributed among any of the departments afterwards named in the same act, is intended to be made a corporate duty, "to be performed by the corporation." The only duties that can be excepted from the effect of this provision are such administrative and governmental duties as are not "local;" and even if that exception can properly and consistently with the language of the act, be made to include such duties as have been previously recognized as state functions, and enforced as such by the state in one form or another throughout the state, such as the work of the departments. of charities and correction, of the police, and of the board of education—duties which in that sense are not "local"—still, it is manifest, that the work and the duties of the fire department, in the inspection and regulation of buildings in the city of New York, in order to prevent fires, as well as its work in extinguishing fires, are not, and never have been of that general nature; but that they are strictly "local," and that consequently by the language of section 27, the duties of the fire department are by the very terms of the act of 1882 "laid upon the corporation," as corporate duties.

The few cases as to the status of the New York fire department cited for the defendant all arose prior to the act of 1882, and under different statutes. O'Meara v. New York, 1 Daly, 425, arose in 1862, when the fire department was a distinct corporation. People v. Pinckney, 32 N. Y. 377, 389–392. The case of Woolbridge v. Mayor, etc., 49 How. Pr. 67, arose under the metropolitan fire department, also a distinct corporation. Clarissey v. Fire Department, 1 Sweeney, 224. In Terhune v. City of Rochester, 88 N. Y. 247, the case was of acts ultra vires, and decided on that ground. The Massachusetts cases are no guide here, because the doctrine of municipal responsibility there is essentially different from that of New York.

The intent of the act of 1882 being sufficiently clear from its language, to make the work of the New York fire department a corporate duty, there is no occasion and no room for the application of principles of legal "construction," such as are appropriate upon ambiguous or doubtful statutes, in order to convert that department, which in itself is a mere branch of the corporation, into an independent legal entity, acting as an agency of the state, instead of being an agency of the corporation.

The decisions of the court of appeals are clear and uniform, as I understand them, that as soon as it appears that the duties in question "are laid upon the city," or "rest upon the corporation," the city is answerable for negligence in performing them. So says Folger, J., in Maxmilian v. Mayor, etc., 62 N. Y. 169. To the same effect are Kennedy v. Mayor, etc., 73 N. Y. 365, 368; Ham v. Mayor, 70 N. Y. 464; Rehberg v. Mayor, etc., 91 N. Y. 142, 145; Ehrgott v. Mayor, etc., 96 N. Y. 272–275; Bieling v. City of Brooklyn, 120 N. Y. 98, 106, 24 N. E. 389; People v. State Board of Canvassers (per Earl, J.) 129 N. Y. 368, 29 N. E. 345.

For these reasons, the libelant is entitled to a decree against the mayor, aldermen, etc., and the defendant Gallagher, with costs.