### LEGGETT v. CITY OF WATERTOWN.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. MUNICIPAL CORPORATIONS — ACTION FOR PERSONAL INJURIES — DEFECTIVE SIDEWALK—QUESTION FOR JURY.

A sidewalk elevated above the surface to approach a bridge adjoined an elevated platform, and steps to a building fronting the same. On an issue as to whether the walk gave way and injured plaintiff, who was standing partly thereon, a witness who was under the platform when it fell stated that he saw a piece of timber which ran from the platform to the sidewalk split, and that as it did so the sidewalk came down with the platform. Several other witnesses testified that stringers supporting the walk next to the platform steps were rotten, and that the walk tipped downward towards the building, and there was considerable further evidence of like tenor. Another testified that, when replanking the

bridge in the year prior to the accident, he examined the joist supporting the walk next to the platform, and that it then had started to rot a little bit, and that he thereupon reported it to the city as unfit for use. Much of the evidence was contradicted, and there was affirmative proof that no stringer for which the city was responsible was broken. *Held*, that the issue was for the jury.

**2. SAME—LIABILITY OF MUNICIPALITY.**

Where an elevated sidewalk adjoins the steps and platform to a building fronting thereon, and they are built together, so that the platform and steps are adapted to the use of the sidewalk as a thoroughfare, and constitute an adjunct thereto, any danger from their insecure condition should be treated as arising from a defective or unsafe condition of the walk itself, for which the municipality would be liable.

**3. SAME—UNUSUAL STRAIN ON ELEVATED WALK—DUTY OF CITY TO ANTICIPATE.**

Where an elevated sidewalk approaching a street bridge, and which was virtually a part thereof, gave way under an unusual strain to which it was subjected by a crowd such as frequently assembled in the streets of a city, it could not be said, as a matter of law, in an action for an injury occasioned thereby, that the city was not required to construct the same with a view to such a contingency.

Appeal from trial term, Jefferson county.

Action by John E. Leggett against the city of Watertown for personal injuries. Plaintiff was nonsuited, and he appeals. Reversed.

Court street, in the city of Watertown, runs practically north and south. At the point where it intersects Black river it curves slightly to the east, and is carried over the river by means of an iron bridge. At the north end of this bridge, and on the easterly side of the street, is a frame building owned by one Henry Dixon, and in front of this building is a platform some 20 feet in length and 6 feet in width. This platform extends to the sidewalk, which runs northerly from the north end of the bridge; access to the walk from the platform being gained by means of three steps which run along the front of the platform, and occupy about two feet of its width. The sidewalk in front of the Dixon building is practically a continuation of the sidewalk upon the east side of the bridge, and is 6 feet in width. It rests partly upon a stone abutment which serves as an approach to the bridge, and partly upon three iron brackets which are fastened to the abutment. Upon these brackets are placed stringers 15 feet in length and 3 by 12 inches in thickness, across which are placed the boards which constitute the walk proper. About 7 feet below the walk and platform is another platform, upon which rest several posts, which are designed to support the upper platform; and beneath this lower platform is an open space extending to the surface of the ground, which is nearly upon a level with the river, and is covered with rocks and stones. Between 2 and 3 o'clock in the afternoon of the 30th day of May, 1898, a considerable crowd of people had assembled upon the Court Street Bridge, and the approaches thereto, to see a man jump from the top of the bridge into the river. The plaintiff, it seems, had been attending some Memorial Day ceremonies at the public square, and at the time above mentioned was returning to his home, upon the northerly side of the river. When he approached the bridge he forced his way through the crowd, and in so doing a hernia from which he was suffering prolapsed, causing him great pain. When he reached a point about 10 feet from the north end of the bridge he stopped to adjust the hernia, to accomplish which he placed his right foot upon one of the steps leading to the Dixon block, and supported himself upon his left foot, which remained upon the sidewalk. While in this position the platform and the easterly edge of the sidewalk gave way, precipitating him and several other persons onto the lower platform, which immediately yielded to the sudden and unusual pressure, and the plaintiff landed upon the rocks below,—a distance of about 25 feet from the point where he was standing when the accident occurred. To recover for the injuries which resulted from this fall, and which, concededly, were of a serious character, this action was brought. Issue was joined therein, and a trial

thereof was had. At the close of the evidence a nonsuit was granted, and from the judgment entered thereon the plaintiff brings this appeal.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and LAUGHLIN, JJ.

Thomas Burns, for appellant.
Watson M. Rogers, for respondent.

ADAMS, P. J. The evidence in the case tends to establish that some portion of the structure upon which the plaintiff was standing at the time of the accident was in an unsafe, defective, and dangerous condition, by reason either of inadequacy of support, or the impairment by decay of one or more of the stringers and posts upon which the platform or sidewalk rested. Moreover, the evidence is unquestionably sufficient to have warranted a finding by the jury that the defendant had actual notice of such unsafe condition at least 48 hours prior to the occurrence which lies at the foundation of the plaintiff's action, and it is conceded that a proper statement of the plaintiff's claim was duly filed with the city clerk. It may consequently be safely assumed that all the prerequisites to the bringing and maintaining of this action which are contained in the city charter have been fully complied with (Laws 1897, c. 760, § 296); and inasmuch as there is little, if any, evidence of contributory negligence upon the part of the plaintiff, the nonsuit must be sustained, if at all, solely upon the ground that the accident was not attributable to any omission of duty by the defendant, but was, rather, due to the negligence of a third party, for whose conduct the city was in no wise responsible. That such was in fact the case is most earnestly asserted by the defendant's counsel, and, although the record does not disclose it, this contention was undoubtedly approved by the learned court before whom the case was tried. Obviously, therefore, it becomes necessary to examine the evidence in the case with some degree of care, in order to determine whether it tends fairly to establish the fact that the defective structure was one belonging to the city, and for the safe condition of which the city was responsible, or, if not, whether the city knowingly permitted an adjoining owner to impair the efficiency and safety of a structure for the safety of which it was responsible by annexing thereto and maintaining in connection therewith another structure, of a defective and dangerous character; for, if there is any evidence which will support a finding in favor of the plaintiff upon either of these propositions, we think it was clearly error to withhold the case from the jury.

It appears that the present bridge over Black river was constructed in 1884 to replace a lattice bridge which occupied practically the same position as the new one, save that the approaches to it were considerably lower. At the north end there was a walk, consisting of one or two planks, running along the easterly side of the approach; and connecting therewith was a single step, by means of which a platform adjoining the lower floor of the Dixon house, and about six inches below the level of the street, was reached. When the new bridge was constructed the northern approach was raised, and a new sidewalk built over the old one in the manner hereinbe-

fore detailed, and with a space of about 7 feet between the two. An additional story was then erected upon the Dixon house, and a new platform built, which, as has been stated, extended to and connected with the sidewalk by means of three steps, and was supported by posts which rested upon the lower platform. This was the situation of affairs upon the day of the accident, and it is the contention of the defendant that it was the platform which gave way, and not the sidewalk, which, it is further contended, was in a perfectly safe and sound condition. The only direct evidence as to the manner in which the accident occurred is that of the plaintiff's witness Kellar, who was under the platform at the time it fell, and who says that he heard a cracking noise behind him, and as he looked up he saw a piece of timber which ran from the building to the sidewalk split, and as it split everything went down. Upon his cross-examination this witness further testified that he did not know whether or not the stick referred to was the first that snapped, but "as that snap came, down went the sidewalk with it." Thomas W. Cahill, another witness for the plaintiff, states that he was at the scene of the accident at about 6 o'clock in the evening of the day of its occurrence, and noticed that the sidewalk "tipped down slightly towards the Dixon Block"; that he saw a joist, in a "rotten, dozy condition," hanging down from the side next the bridge; and that it was hanging down into the hole under the easterly edge of the walk. Another witness (Wilbur D. Phillips) testified: That he saw two broken stringers, which showed a condition of dry rot, and that one of them "had laid on the ends of the iron brackets. * * * It was the one nearest the Dixon block. It lay under the edge of the sidewalk." And that the east ends of the boards of the sidewalk inclined towards the block about 6 inches, while the west ends were tipped up a corresponding distance. Upon his cross-examination this witness stated that the stringers of which he had been speaking were under the platform, and not under the walk; but, upon having his attention called to this discrepancy in his evidence, he declared that he had misunderstood the inquiry of counsel, and emphatically reiterated his former statement that the sidewalk boards, and not the platform, rested upon the stringers which were broken. Peter Shaw testified: That prior to the accident, and in 1897, he was employed to plank the Court Street Bridge, and while engaged in that occupation he had occasion to go to a water-closet under the Dixon platform. That his attention was directed to the walk and its supports, and he then discovered that "the walk was supported partly by a stone wall running along, and partly by iron brackets, upon both of which joists were placed, and then the sidewalk boards on top." That he could see the joist that rested on the iron bracket at the edge of the walk nearest the Dixon block. That it was a pine stock, 4 by 12 inches, "lying upon edge. It was a little bit started to rot." And that when he went back to the bridge he reported what he had discovered to Mr. Parker, the city superintendent of public works, and told him that the walk was not fit for anybody to walk upon. It appears that the Mr. Parker referred to did

66 N.Y.S.—58

not contradict the evidence given by this witness, nor was he sworn
as a witness, although he was in court and sitting near the defend-
ant's counsel during the progress of the trial. Herman S. Miller,
another witness for the plaintiff, testified that he was in the vicinity
of the bridge when the accident occurred; that he ran over to the
walk, and discovered the hole through which the plaintiff and oth-
ers had fallen; that the boards of the sidewalk opposite the hole
tipped towards the east; that he looked to see what had given
away, and discovered there was a stringer there that was "all rot-
ted and broken"; and that this stringer was not connected with the
Dixon building, but ran along the walk. Another witness (Joseph
Snyder), who lived in the Dixon house, testified that he was present
when the accident occurred; that he examined into the cause of it,
and found that the stringer which lay upon the iron bracket, and
upon which the walk rested, was rotten and broken. This witness
further testified that about the 20th day of November, 1897, six
months prior to the accident, he was engaged in putting new plank-
ing on the lower platform; that while thus occupied Mr. Baker, the
sidewalk inspector, was present; that witness discovered that the
front stringer under the east edge of the sidewalk was rotten, and
spoke to Mr. Baker about it; that Baker tested it with a hammer,
and made some entries in a book; that the stringer shook when
struck with the hammer; and that the witness then demonstrated to
Baker that he could not fasten a nail into it, because it was in such
a condition that the nail would not hold. There was considerable
further evidence of like tenor of that to which we have referred,
and which bore with more or less force upon the particular branch
of the case now under consideration. But we think enough has
been cited to warrant us in saying that there was certainly proof
that the breaking of the easterly stringer under the sidewalk was
one of the direct, proximate, and efficient causes which produced the
accident in question; that at the time of the accident this stringer
was in a decayed and imperfect condition; that its condition was
brought to the actual notice of the defendant long before the acci-
dent occurred; and consequently that there was some evidence tend-
ing to establish the liability of the defendant for maintaining an
unsafe and defective sidewalk along one of its public streets. Upon
the other hand, however, it is proper to say that much of the evi-
dence to which reference has been made was flatly contradicted by
the defendant's witnesses, and that affirmative proof was also fur-
nished to the effect that no stringer for which the city was respon-
sible was broken; that the hole through which the plaintiff fell did
not extend beyond the platform; and that the level of the sidewalk
was in no manner disturbed by whatever caused the accident. But
manifestly the effect of this evidence was simply to raise an issue
of fact, and one with which the jury were alone authorized to deal.
It is by no means impossible that upon the whole evidence a ver-
dict would have been rendered in favor of the defendant, but, how-
ever that may be, we think it was reversible error to hold, as mat-
ter of law, that upon this branch of the case there was no evidence
to support the plaintiff's contention.

We come now to a consideration of the last of the two propositions into which this case has resolved itself, only to find that, like the first, it presents, also, an issue of fact.  We have said that if the defendant knowingly permitted an adjoining owner to impair the efficiency and safety of a structure for the safety of which it was responsible, by annexing thereto and maintaining in connection therewith another structure of a defective and dangerous character, its liability for the consequences arising therefrom was the same as if its own structure was in an impaired and unsafe condition;  and such we believe to be a correct statement of the rule of law applicable to the branch of the case we are now discussing.  It was the duty of the municipality to construct and maintain sidewalks over and along its thoroughfares which should be reasonably safe for the use of such pedestrians as had occasion to pass over them;  and if it knowingly permitted the safety and efficiency of any of its walks to become in any manner impaired, either by their own inherent infirmity, or by the conjunction of an unsafe structure erected by an adjoining owner, it violated its plain duty, and subjected itself to the consequences which flowed therefrom, for in such a case there is no difference between active and passive negligence.  Bieling v. City of Brooklyn, 120 N. Y. 98, 24 N. E. 389;  Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095;  Kunz v. City of Troy, 104 N. Y. 344, 10 N. E. 442.  This particular walk, it seems, was constructed in a peculiar manner, and over something in the nature of a precipice.  It would seem, therefore, that, instead of imposing upon it an additional burden, more than ordinary pains should have been taken to render it absolutely safe to the public.  With this rule of liability in mind, it becomes necessary to enter once more into a brief analysis of the evidence, in order to determine how far it tends to support the proposition which we are now considering, and in this connection the evidence to which allusion has already been made, to the effect that there was a defective stringer extending along the eastern ends of the iron brackets upon which the boards of the sidewalk rested, becomes important;  for, even assuming that that particular piece of timber was provided and used by the owner of the Dixon house as a support for the west side of the platform and steps, if it furnished a like support for the walk it is evident that the platform and walk were to some extent, at least, dependent upon each other for support, and that, if the former gave way in consequence of the insecurity of the stringer, it was liable to carry some portion of the walk with it, or, at all events, to cause it to incline towards the east in the manner described by some of the plaintiff's witnesses.  But this is by no means the only evidence relied upon by the plaintiff's counsel.  Our attention is directed to the testimony of the witness John McGuire, who says that the defective stringer "rested on some iron brackets, and the walk rested on the stringer, and the steps above to which this platform extended rested on the end of the board walk";  and in this he is corroborated by the witness Phillips, who testified that the stringer was near the edge of the steps, and that "the edge of the step rested on the sidewalk."  Again, the witness Snyder, in speaking of the stringer, said that:

"Where it was broken, it appeared rotten on top. It was all soggy and rotten. At the place where this break was, the riser of the step lapped over the edge of the walk about two inches. * * * That in some places the riser would not extend very much over the edge, but there was no place where it did not catch."

And upon his cross-examination this witness further testified that there were slanting timbers running from the side of the Dixon house to the east stringer of the sidewalk, that these timbers were evidently intended as a support for the platform, and that they had been nailed to the stringer. It is not claimed that there was any space between the steps and the sidewalk. Indeed, William E. Hudson, who was a witness for the defendant, testified that he had never observed "any space between the first riser of the step and the sidewalk." And so, regarding the entire evidence from a standpoint most favorable to the plaintiff, as we are bound to do for all the purposes of this review (McPeak v. Railroad Co., 85 Hun, 107, 32 N. Y. Supp. 647; Erkson v. Johnston, 8 App. Div. 31, 40 N. Y. Supp. 401), the conclusion cannot be well avoided that it was sufficient to sustain a finding that the platform and steps were insecurely constructed and maintained; that they were not merely an incident or attachment to the Dixon building, but that they were constructed with reference to the use of the sidewalk as a thoroughfare, and were so adapted to its arrangement and use as to constitute an adjunct thereto, within the principle enunciated in the case of Hume v. Mayor, etc., 74 N. Y. 264. And, if such be the case, then it follows, within the doctrine of the same case, that any "danger from [their] insecure condition may reasonably be treated as arising from a defective or unsafe condition of the sidewalk" itself.

It is insisted, however, that the city was not bound to provide a sidewalk which would sustain the unusual weight to which this one was subjected at the time of the accident. It is doubtless true that this particular accident might not have happened but for the crowd of people which had congregated in the vicinity of the Dixon premises to see a man jump from the Court Street Bridge. But the people were lawfully there, for aught that appears, and crowds do frequently assemble in large towns and cities for one purpose and another, in consequence of which bridges are sometimes subjected to an unusual strain; and, as this sidewalk was virtually a bridge, we are not prepared to say, as matter of law, that the city officials were not required to take into consideration the facts above stated, when constructing and maintaining the same. But, without extending any further our discussion of the case, it is sufficient to say that, for the reasons already set forth, we think the judgment of nonsuit should be reversed, and a new trial granted.

Judgment reversed and new trial ordered, with costs to the appellant to abide event. All concur.