(75 App. Div. 274.)

### SWEET v. CITY OF POUGHKEEPSIE.

(Supreme Court, Appellate Division, Second Department. October 3, 1902.)

1. MUNICIPAL CORPORATIONS—DEFECTS IN PUBLIC WAY—LIABILITY.

   Though a city may be liable for the defective condition of a portion of the traveled roadway so near the line of a street as to induce the belief in one passing along the street and exercising reasonable care that he is within the limits thereof, it owes no duty to see that a path or driveway made on private property by the public in walking or driving across the same is safe from an obstruction existing on private land, but so near to the path or driveway as to constitute a source of possible danger.

2. SAME—NOTICE OF DEFECT.

   The question of the length of time necessary to charge a municipal corporation with knowledge of a defect in a public way is one of fact, and in a much-traveled street the conditions and surroundings may be such that two or three weeks will be sufficient.

   Woodward, J., dissenting.

Appeal from Dutchess county court.

Action by Pedro Sweet against the city of Poughkeepsie. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Martin Heermance, for appellant.

C. Morschauser, for respondent.

HIRSCHBERG, J. The action is brought to recover damages to the team and wagon of the plaintiff, occasioned by contact with a stump on private property near the corner of Smith and Cottage streets, in the city of Poughkeepsie, and for personal injuries to the plaintiff, which the evidence tends to indicate may have been occasioned by the accident. The plaintiff was turning the corner on the night of December 12, 1900, when his wagon came in contact with the stump, and he was thrown out. He had driven up Smith street, which runs northerly, and turned westerly into Cottage street. There is an electric railway going up Smith street and turning on a curve into Cottage street, the tracks being about six feet from the corner made by the intersection of the two streets. The stump was the remains of an apple tree, was 20 inches high and 14 inches wide, and stood about 6 inches from the southerly side of Cottage street, and 3.6 feet from the corner of the streets referred to. The adjoining private property at the corner was unfenced on either street, and the public had been accustomed to drive across this property from one street into the other, making a beaten track west of the stump, and which at its nearest side was seven feet distant from the stump. The burden of the proof is, of course, upon the plaintiff. The evidence does not very clearly establish just where he was driving at the time of the accident, but it strongly tends to indicate that he was driving upon the beaten track across the private property. He testified as follows:

"Coming up Smith street, I turned the corner, and struck the stump, and that is all I know about it. * * * When I went home the night of the accident, I went up Smith street. I crossed the track to the right-hand side near Winnikee avenue, and recrossed the track to the left-hand side at Cottage street, at the corner where the track is. I suppose I must have gone up on the right-hand side, and turned across the track to this stump."

Eddie Jones saw the plaintiff thrown out of the wagon, and testified that he went out on the right-hand side. He immediately went to him, and found him lying unconscious. Henry McDonald testified that he went to the place, and helped to pick the plaintiff up, and that he was lying "a couple of feet west of the stump." Jones testified that the plaintiff's left wheel struck the stump, but it is evident that this was mere conjecture. He did not see the stump, did not even know that it was there, and it would be a physical impossibility for the left or westerly side of the wagon to have struck the stump and the plaintiff to have been thrown out to the right,—that is, to the east,—and to have fallen upon the ground westerly of the stump. The inference necessarily deducible from the undisputed proof as to where the plaintiff was found after being thrown out of the right side of his wagon is that he was driving on or near the "beaten track" on the private property, and that the right side of his wagon hit the stump, if the stump was hit by the wagon at all. If the plain-

tiff was injured while driving across a track made by the public in crossing a private lot, and the injury resulted because a dangerous obstruction had been permitted to remain upon the lot, but so near to the beaten track as to constitute a menace, the cases on which the plaintiff relies to support his judgment have no application. They apply to obstructions or excavations near to the boundaries of streets or highways, and separated therefrom by no visible mark which may aid to keep the traveler within the public thoroughfare. The case of Jewhurst v. City of Syracuse, 108 N. Y. 303, 15 N. E. 409, is the leading case in this state upon the subject. There the owner of land adjoining one of the defendant's streets had built a sidewalk along the line thereof, consisting of two strips of 12-inch plank laid lengthwise of the street 1 foot apart, one strip inside and one outside of the limits of the street; and the plaintiff was injured by the breaking of the plank on which he was walking outside of the street limits. The sidewalk had been out of repair for a year, to the knowledge of the defendant. A judgment recovered by the plaintiff was affirmed by the court of appeals upon the theory that, where there is no visible boundary to the line of a city street, and a portion of the roadway traveled on is so near the line as to induce the belief in any one passing upon the street and exercising reasonable care that he is within the line thereof, if such portion is for any reason rendered dangerous for travel, and the city has notice thereof, and such danger can be remedied by the exercise of reasonable care, either by the erection of a guard or railing along the line of the street or in some other way, and the city neglects to do this, it is liable to one injured because of such defect while traveling upon such portion of the roadway, if he himself is free from any contributory negligence. The fact that the city in such a case would have no right to go upon the private property and repair the defect was fully recognized by the court; but the defect, because of its propinquity to the highway and its apparent connection with it, was treated as a defect in the highway itself. The decision would be authority in the plaintiff's favor herein had he come in contact with the stump while traveling upon either Smith street or Cottage street, but I know of no case which holds that a city is under any duty of care to see that a path or driveway made upon private property by the public in walking or driving across the same is safe from an obstruction existing upon the private land, but so near to the path or driveway as to constitute a source of possible danger. In such a case there would not exist either the right to remedy the defect or to fence or guard it from the driveway on the private property. The cases of Leggett v. City of Watertown, 55 App. Div. 321, 66 N. Y. Supp. 910, Murphy v. Village of Seneca Falls, 57 App. Div. 438, 67 N. Y. Supp. 1013, and Donnelly v. City of Rochester, 166 N. Y. 315, 59 N. E. 989, cited in plaintiff's behalf, are similar in character to that of Jewhurst v. City of Syracuse, supra. Each presents an instance of a dangerous condition directly adjacent to a public street, and menacing the safety of a traveler thereon. The cases of Ivory v. Town of Deerpark, 116 N. Y. 476, 22 N. E. 1080, and Schafer v. City of New York, 154 N. Y. 466, 48 N. E. 749, also relied on by the plaintiff, are not in point.

They do not support the proposition that the defendant herein is to be held liable because it has permitted the public to use the "beaten track" across the private lot as an ordinary street. In the Ivory Case the road had not only been used for public travel for many years, but had been recognized and treated by the town officers as a highway; and in the Schafer Case the land had been laid out and partially improved as a street by the municipal authorities, but not formally opened; and in each case it was held that the general duty of keeping the public streets and highways in a reasonably safe condition applied to streets which had been so used or laid out and recognized as such by the authorities. Manifestly, there is nothing in the doctrine of these cases which would justify a holding that a city is charged with the duty of keeping a road safe which the public has created by voluntary travel over private land, and especially of keeping such a road safe from obstructions seven feet distant from it, and also located upon the private property.

It is undisputed in the case, as now presented, that the stump in question, although it had been standing some years, was not a source of danger until shortly before the happening of the plaintiff's accident. There was a post on one side and a telegraph pole on another side, which served to form a protection; but the pole had been cut down by some one undisclosed some time prior to December 12, 1900. The witness who testified on the subject said:

"Prior to the accident, and after the tree was cut down and the stump remained, a telegraph pole and an old post were there besides the stump. They acted as a guard to the stump. You could see this post in the night-time. The telegraph pole was taken away three or four weeks prior to this accident, and the stump was left there. * * * I am not positive how long this telegraph pole was down. It might have been two or three weeks."

It is not claimed that the city had actual notice of the existence of the stump, and its liability must, therefore, be predicated upon constructive notice, if at all. In the Jewhurst Case, supra, the defect had existed for a year, and the defendant had actual notice. In Coggswell v. Inhabitants of Lexington, 4 Cush. 307, cited in that case, the post which did the mischief had stood by the roadside a great many years, and the court found (page 310) "that the defendant, though it had reasonable notice of the course of the travel, and that the post was dangerous to travelers, suffered it to remain an unreasonable time." In Hayden v. Inhabitants of Attleborough, 7 Gray, 338, also cited in the Jewhurst Case, the cellar into which the plaintiff was thrown had been dug two years before the accident. In Leggett v. City of Watertown, supra, the defect was pointed out to the defendant's sidewalk inspector six months before the accident. In Murphy v. Village of Seneca Falls, supra, the defect existed for some seven months, and two of the village trustees had ample opportunity to see it almost every day during that time. In Donnelly v. City of Rochester, 166 N. Y. 317, 59 N. E. 989, "the areaway and railing had existed for a number of years in the same condition as at the time of the accident." It therefore appears that in all the cases where liability has been imposed upon municipal corporations because of dangerous

conditions adjacent to highways the dangerous condition was either known to the authorities, or had been negligently suffered by them to remain unguarded, a much longer period of time than in the case at bar. The question of the length of time necessary to charge the defendant with knowledge in the exercise of reasonable care is one of fact, and in a much-traveled city street the conditions and surroundings may be such that two or three weeks would be deemed ample time. But this consideration is only germane to the case in the event that it shall be made to appear on a fuller and more definite disclosure of the facts that the plaintiff was traveling upon one of the two public streets at the time he came in contact with the stump, and had not turned off upon the "beaten track" on private property, where the city had neither jurisdiction, nor physical power to protect him from injury.

The judgment and order should be reversed, and a new trial granted; costs to abide the event.

GOODRICH, P. J., and BARTLETT and JENKS, JJ., concur.

WOODWARD, J. (dissenting). The facts in this case are so entirely analogous with those in the case of Coggswell v. Inhabitants of Lexington, 4 Cush. 307, cited with approval in Jewhurst v. City of Syracuse, 108 N. Y. 303, 306, 15 N. E. 409, that I cannot agree in the result reached by my associates. I think the evidence fully sustains the verdict, and I am not in favor of disturbing the judgment.