### LEGGETT v. CITY OF WATERTOWN.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. **MUNICIPAL CORPORATIONS—SIDEWALKS—DEFECTS—ADJOINING PREMISES.**
   Where plaintiff was injured by the falling of a sidewalk and a platform maintained by an adjoining property owner and attached to the sidewalk, but which formed no part of the highway, the city was not bound to keep such platform in repair, and hence an instruction authorizing a recovery if plaintiff was injured by reason of a defect in the sidewalk, or through a defect in the platform or structure in conjunction therewith, was erroneous.

2. **SAME—WITNESSES—CONTRADICTION—AFFIDAVITS—EVIDENCE.**
   Where it was claimed that an affidavit made by a witness contained statements contradictory to his testimony, but such affidavit contained other statements than those concerning which the witness was questioned, which were hearsay, the affidavit was inadmissible.

   McLennan, P. J., and Spring, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by John E. Leggett against the city of Watertown. From a judgment in favor of plaintiff, and from an order denying defendant's motion to set aside the verdict and for a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

F. B. Pitcher, for appellant.

Purcell, Walker & Burns, for respondent.

STOVER, J. This is an action to recover damages by reason of an alleged defect in a highway. The highway in question is a public street in the city of Watertown, leading to and over a bridge, the point at which the accident occurred being upon premises adjoining and contiguous to the bridge and the sidewalk leading from the bridge in front of the abutting premises. The walk from the bridge leading northerly was supported partly by a wall and by upright pieces of timber.

The evidence showed that adjoining the sidewalk was a platform and steps leading to it, which was used by the abutting owner in conjunction with his property.  Between the easterly edge of the sidewalk and the building upon the abutting property, called the "Dixon Property," was a space of about six feet.  This space was occupied by a platform extending from the north end of the bridge and in front of the Dixon premises about 20 feet.  The platform was higher than the sidewalk, and was reached by means of three steps, which ran along the front of the platform and occupied about two feet of the width, leaving about four feet of platform between the steps and the Dixon building.  The steps at the westerly end of the' platform, and which form the approach to the platform, according to the plaintiff's version, rested upon the easterly edge of the sidewalk, and, as one or more of the witnesses gave it, projected about two inches on the sidewalk. There was an iron railing at the easterly side of the bridge extending to the southerly side of the platform, and at the northerly side of the platform the iron railing was continued along the easterly edge of the sidewalk, the opening in the iron railing being the length of the platform, which was used as an approach to the Dixon premises.  At the time of the accident, a number of people had collected for the purpose of witnessing an exhibition of daring by a man who had advertised that he would jump from the top of the bridge into the river below.  The accident occurred on Memorial Day, 1898.  The testimony of the plaintiff is that, as he was passing down the street and came to the bridge, he saw a large crowd there; that the crowd was so large on the walk it was impossible to get through, so he took the roadway across the bridge; that he pushed his way through there, and after he got across the bridge he undertook to get on the board walk again, and finally, after working through, he got as far as the Dixon property, and, owing to not having his truss on, he found he had trouble from a rupture in the groin; that he put his foot upon one of the steps and leaned over, and made a pressure with his thigh to adjust the breach; that when he had been there but a minute or two the crowd came and rushed onto the board walk, and he was standing with his left foot upon the bridge walk, when the walk and platform and all went down, and he went with it.  Beneath the platform on the Dixon property was an open space about 15 to 20 feet deep.

The evidence as to the condition of the walk after the accident is somewhat conflicting.  The walk itself did not fall, but some of the witnesses testified that it sank on the easterly side when the platform gave way, and the boards were tipped up, the lower portion being towards the easterly side of the walk.  The evidence showed that the plaintiff was injured by the fall.  This case was before this court on a former appeal.  55 App. Div. 321, 66 N. Y. Supp. 910.  Upon that appeal a judgment of nonsuit was reversed, and a new trial ordered.  The rule governing the case as presented upon that appeal, and which was necessary to the decision of that appeal, was as follows:

"It was the duty of the municipality to construct and maintain sidewalks over and along its thoroughfares, which should be reasonably safe for the use of such pedestrians as had occasion to pass over them; and if it knowingly permitted the safety and efficiency of any of its walks to become in

any manner impaired, either by their own inherent infirmity or by the conjunction of an unsafe structure erected by an adjoining owner, it violated its plain duty, and subjected itself to the consequences which flowed therefrom."

This is the correct rule, and should have been applied upon the retrial of the case. This rule was charged almost verbatim by the trial court, but in connection therewith this language was used:

"So if you find that the plaintiff received his injury upon that occasion through a defect in that sidewalk, or through a defect in the structure in connection and conjunction therewith—this platform and the surroundings and the structures and the timbers that are about it—if he received his injury from either of those causes, then you must find a verdict, if you find the other questions, in favor of the plaintiff. That I charge you to be the law in this case; that it makes no difference whether it was from the defective condition of the sidewalk or from the defective condition of the platform and steps and structure, if he received his injury from that and—    Plaintiff's Counsel: Your honor, in conjunction—    The Court: I have already said 'in conjunction with the sidewalk.' I think I have charged that plain enough. If I have not, I will charge that later on. If you should find in this case that the plaintiff is right, in other words, that the plaintiff was free from contributory negligence, that the city, the defendant, had actual notice of more than twenty-four hours of the unsafe condition of the sidewalk—    Plaintiff's Counsel: Forty-eight hours. The Court: Forty-eight hours of this sidewalk, and that from that defective condition of the sidewalk, or the structure connected therewith, he received his injury, you will then approach the question of damages."

Again the court was asked to charge that, if the jury found that the sidewalk remained intact at and during the accident, there could be no recovery.

"The Court: What do you mean by 'intact'? Do you mean the sidewalk itself, or this structure and its connections with the other structure, if there was connection? Defendant's Counsel: No, I mean the sidewalk between the roadbed and the railing and the Dixon steps. The Court: If you mean simply the planks of the sidewalk itself remained intact, I refuse to charge it in that way."

And so, when asked to charge that if the jury found the sidewalk remained intact, and that the plaintiff, if he had continued with both his feet upon the sidewalk, would not have suffered the accident in question, there could be no recovery, the court again said: "I will so charge in case they find that there was no connection between this other structure and the sidewalk." When asked again to charge that if the injury came to the plaintiff from causes outside of the highway there could be no recovery, he charged that that would be so, if not connected with the highway in any manner. Again, when asked to charge that it was immaterial whether any of the planks were or were not decayed, the request was refused, and it was left to the jury to say whether it was material or not. And finally, when requested by defendant's counsel to charge that the defendant was only liable for its structure and its safe maintenance, the court charged:

"I charge the jury on that question that the defendant is liable for either by their own inherent infirmity of the sidewalk and its structure, or by the conjunction of an unsafe structure erected by an adjoining owner; that is the Dixon property in this case."

So the instruction to the jury was substantially that if they found the platform or structure adjoining the sidewalk was in any way con-

nected with the sidewalk, and the injury resulted from a defect either in the platform or the sidewalk, there could be a recovery by the plaintiff. We think this was an erroneous interpretation of the rule of law. The defendant owed the duty to keep the highway in repair. It was under no obligation to see that adjoining owners maintained safe structures as approaches to the highway. Defendant had no authority outside the confines of the highway, and it could not undertake to repair such structures. And, in stating this, we are not unmindful of the duty imposed upon municipalities to guard against open, apparent dangers abutting upon the highway, and the circumstances which impose upon municipalities the duty of erecting barriers. But we think no case can be found where a municipality has either been charged with the duty of maintaining an approach to its sidewalk upon private property, or compelled to incur the responsibility of barricading owners of property against access to or egress from their premises, when, in the judgment of the municipality or its officers, their approaches were not of a proper character. Such a construction of the law would be imposing a new burden upon municipalities with respect to the care of highways. The true rule, as above laid down, would impose upon a municipality the burden of seeing that its own walk did not become dangerous by reason of the illegal erection of a structure upon it. So that if, by reason of the erection of the platform and steps—the structure connected with the Dixon property—the efficiency of the highway had been so impaired as to render it dangerous or liable to produce injury, the city would be liable for results occurring by reason of the impairment of the walk itself, but it would not be liable for injuries resulting from defects in the platform or the steps, so long as it maintains its highway to a proper degree of efficiency and safety. The difficulty seems to have been in giving too broad an interpretation to the words "by the conjunction of an unsafe structure." The city was not liable for the defects of the structure of the adjoining owner, but it is liable only for the defects of its own structure, and its liability is confined to that. Whether the defect was inherent in the sidewalk itself, or was created by a conjunction with the sidewalk, is immaterial; but it is quite material as to the location of the defect. It may be that the cause of the defect may not be material, but the defect itself must be in the sidewalk; and the sidewalk being proper and reasonably safe, the municipality cannot be charged for defects existing in the adjoining platform or structure. An examination of the record satisfies us that the case was presented to the jury upon the theory that the city was liable for any defect, whether existing in the sidewalk or the platform connected with it; and if we are right in the propositions above stated, this was error which was necessarily prejudicial to the defendant.

A witness for the defendant had made an affidavit which is claimed by the plaintiff was contradictory to the testimony given upon the trial. It contained other statements than those about which he was questioned. The affidavit was offered in evidence, and was admitted, under the objection of the defendant. We think this was error, as the affidavit contains some statements giving a conversation which he had with one Phippin, superintendent of public works, who was also

examined as a witness upon the trial, and giving a statement of what Phippin said to him at the time, and with regard to which Phippin was not examined upon the trial, saying, among other things, that he (Phippin) "could not go home and rest until it was fixed," and other statements. While, perhaps, this of itself would be insufficient to reverse the judgment, in view of a retrial of the case, we make this comment upon it. For the reasons above stated, a new trial must be had.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur, except McLENNAN, P. J., and SPRING, J., who dissent.