KATHARINE EAGAN, Plaintiff, *v.* CITY OF BUFFALO, Defendant.

(Supreme Court, Erie Trial Term, December, 1918.)

Municipal corporations — liability of municipalities for dangerous conditions of public highways — negligence — evidence — city of Buffalo — when motion to set aside verdict and for new trial denied.

Municipalities having knowledge thereof are responsible not only for dangerous conditions of the public highways but are also liable for unsafe conditions known to them to exist in places where pedestrians passing along the highways would be apt to go, even though not within the traveled pathways.

After the defendant city had laid a concrete sidewalk in front of certain premises the owner constructed a concrete walk from the entrance of his house to the sidewalk, which, though slightly narrower than the sidewalk where it joined it, was on the same level and for about four and one-half feet occupied space between the sidewalk and the property line. When a new sidewalk on the balance of the street was completed there were steps of from five to six inches high at each end of the sidewalk in front of the premises in question and after the owner had written to the street department having the matter in charge, calling attention to what he deemed an unsafe condition and asking that it be remedied, the city laid a new sidewalk in front of his premises at a level five or six inches below the one replaced, but the walk leading to the house was not disturbed. While this was the situation, plaintiff, who lived with relatives at the premises in question, was walking along the sidewalk in the evening and upon reaching and in

attempting to step onto the walk leading to the house her foot went under the concrete of said walk, causing her to fall. In an action against the city to recover for personal injuries it appeared that about fifty feet from the place of the accident there was a city electric light over the middle of the street and there was evidence from which the jury must have found that the plaintiff was unaware of the change of grade of the sidewalk or the difference of its level and of the walk laid by the owner of the premises where she lived. *Held,* that a motion to set aside a verdict in her favor and for a new trial will be denied upon the ground that the city was liable for creating the condition from which the danger arose.

Whether such condition was in and of itself a dangerous one and whether the plaintiff was guilty of contributory negligence were questions of fact, and even though not free from doubt, the verdict should not be set aside as against the weight of evidence.

MOTION by defendant for a new trial, after a verdict by a jury in favor of the plaintiff.

Hamilton Ward, for plaintiff.

Clayton M. Smith, for defendant.

SEARS, J. Some ten years before the accident, out of which this action arises, the city of Buffalo laid a concrete sidewalk, sixty feet in length, in front of two houses known as Nos. 44 and 46 LaForce place. This sidewalk was five or six feet in width, and there was a space of about four and one-half feet between the sidewalk and the line of the adjacent private property, left for a grass plot. The owner of No. 44 LaForce place then constructed a concrete walk running from the entrance to his house to the city sidewalk. This walk, so laid by the property owner, was slightly narrower than the city sidewalk, and where it joined the city sidewalk it was on the same level as the city sidewalk. Four and one-half feet of the walk laid

by the property owner was thus within the boundaries
of the street, occupying the space between the city
sidewalk and the property line.

In 1916, the city determined to pave LaForce place,
and lay hard sidewalks where such had not already
been laid, and a grade was then established which, for
the sidewalk, was about five or six inches lower than
the city sidewalk previously laid in front of Nos. 44
and 46.  When the new sidewalk on the balance of
the street was completed, there were steps of from
five to six inches in height at each end of the city side-
walk in front of Nos. 44 and 46.

The owner of No. 44 LaForce place wrote to the
city department having this matter in charge, calling
attention to what he deemed an unsafe condition, and
asking that it be remedied.  The city thereupon
replaced the old city sidewalk in front of Nos. 44 and
46 LaForce place by a new one, at a level of five or
six inches below the one thus replaced, but the walk
leading from No. 44 LaForce place to the city sidewalk
was not disturbed, and where it met the new city side-
walk it was higher than the new city sidewalk by
between five and one-half and six inches, so that one
intending to go to the house No. 44 from the city side-
walk would have to step up about five and one-half or
six inches when passing from the city sidewalk to the
walk that had been constructed by the property
owner.  The face of this step consisted at the top of
concrete, and below were cinders which had been the
foundation for the concrete, but which, at the time of
the accident, had slightly fallen out, so that there was
a little open space below the concrete.  The new city
sidewalk in front of these two houses was laid from
November 3 to November 6, 1916.

The plaintiff lived in the second story of No. 44
LaForce place, with relatives who rented the story

as a flat.   On November 11, 1916, in the evening, she left the premises by a back way,. and after a circuitous walk reached the sidewalk on LaForce place at a point in front of No. 46, and continued to walk on the city sidewalk as far as the walk leading to No. 44, and then, when attempting to step on to the walk laid by the property owner, her foot went under the concrete of that walk, and she fell and received the injuries for which she has recovered a verdict.

There was a city electric lamp over the middle of the street, about fifty feet from the place of the accident.

There is evidence in the case from which the jury must have found that the plaintiff was unaware of the change of grade of the city sidewalk, or the difference of the level of the city sidewalk and of the walk laid by the property owner.

The city contends that these facts are insufficient to establish negligence on its part, claiming that, even though the situation was dangerous, the place being outside of the portions of the street where travellers would pass, it was not dangerous to a person travelling along the street, and was not sufficient to charge the city with negligence.   That contention is based largely on *King* v. *Village of Fort Ann,* 180 N. Y. 496, and *Leggett* v. *City of Watertown,* 93 App. Div. 80.   If the liability of a municipality in respect to the condition of highways is to be confined solely to conditions dangerous to travellers passing *along* the highways, then the verdict here cannot be sustained.

Municipalities are not only held responsible for dangerous conditions known to them, which are permitted to exist in portions of highways travelled by wayfarers, but they are also, undoubtedly, responsible for unsafe conditions known to them to exist in places where travellers passing along the highways would

be apt to go, even though not within the travelled pathways. *Ivory* v. *Town of Deerpark,* 116 N. Y. 476; *Collett* v. *City of New York,* 51 App. Div. 394; *Archer* v. *City of Mount Vernon,* 57 id. 32. Evidently, the reason why a municipality is not responsible under such circumstances as were presented in the case of *King* v. *Village of Fort Ann, supra,* is, that the municipality has no reason to anticipate that anyone, wayfarer or anyone else, would be injured by the conditions there existing; but, where the municipality should reasonably expect that some person would be apt to be injured by the condition, then negligence can be predicated upon allowing such condition to continue, after notice, even though not within the travelled space.

In *Dennis* v. *Village of Elmira Heights,* 59 App. Div. 404, adopted as the opinion of the Court of Appeals in *Dennis-Wickers* v. *Village of Elmira Heights,* 182 N. Y. 534, a traveller in a vehicle, travelling from a private though commonly-used road into a public highway, was injured through an accident due to a difference in the level of the private road and the highway, which was caused by the lowering by two or three feet of the grade of the highway. Mr. Justice Merwin, treating the case as one of first impression, there says in the opinion (at p. 409): "The rule applicable to cases like this may, I think, be fairly stated as follows: 'If a road apparently, though not in fact, a public highway, is commonly used by the public, and a municipality, in the exercise of its right in improving an intersecting street, leaves the approach from the road in a dangerous condition, the duty of the municipality to the public requires the exercise by it of reasonable care to the prevention of such accidents as may reasonably be anticipated to happen to those travelling upon the road with due care and in ignorance of the danger.'"

The person injured in that case was not travelling along the highway, but was coming into the highway from a private, though much used, road. The municipality should have known that the place where the dangerous condition existed would be used, and, therefore, liability was imposed.

In *McCloskey* v. *Buckley,* 223 N. Y. 187 (at p. 192), it is stated, in the course of the opinion, that a municipality would be responsible to a child hurt by the fall of gateposts erected by an abutting owner within the limits of a highway, and not interfering with, or endangering, one passing along the highway, provided the municipality permitted the gates to remain after notice, actual or constructive, that they were an attraction to children, and were likely to cause injury to children or others. In other words, the city would there have notice that a person would be apt to be injured by the condition existing within the highway, and negligence could, therefore, be predicated thereon, even though the person liable to be injured was not a wayfarer along the highway.

In the instant case it was apparent to everyone that a person passing from the city sidewalk on LaForce place into No. 44 would naturally pass over the walk laid by the property owner, and if the condition created by the city was dangerous to such a one, then the city should be held responsible for creating the condition from which the danger arose.

The defendant has cited a number of cases in Maine and Massachusetts, which are contrary to this view. *Philbrick* v. *Pittston,* 63 Maine, 477; *Leslie* v. *City of Lewiston,* 62 id. 468; *Morgan* v. *City of Hallowell,* 57 id. 375; *Blake* v. *Newfield,* 68 id. 365; *Brown* v. *Skowhegan,* 82 id. 273; *Kellogg* v. *Northampton,* 4 Gray, 65; 8 id. 504; *Felch* v. *West Brookfield,* 184

Mass. 309; *Lynch* v. *City of Boston,* 186 id. 148. See note in 37 L. R. A. (N. S.) 357.

These cases seem to rest merely upon the inexpediency of extending the liability of municipalities to others than travellers along the highway, but I prefer to follow the principle which is suggested, I believe, by the decision in the New York cases, which have been cited.

The city also contends that the condition in and of itself was not a dangerous one, and that the plaintiff was, herself, guilty of contributory negligence. Both of these questions are, in my opinion, questions of fact, and, although they are not free from doubt, I do not feel disposed to set aside the verdict as against the weight of evidence in these respects.

The motion for a new trial is, therefore, denied.

Motion denied.